## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MADELINE RIGGILADEZ,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1337 (RJL)** |
| | ) | |
| **HON. FRANCIS J. HARVEY,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS, IN PART, AND FOR SUMMARY JUDGMENT**

Francis J. Harvey, Secretary of the Army, Defendant, by his attorneys, hereby submits this

Memorandum in support of his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6), and for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I.  INTRODUCTION

Plaintiff filed the instant complaint against the Secretary of the Army ("Defendant" or

"the Army") in the United States District Court for the District of Columbia on July 27, 2006.

She brings her civil action under the Age Discrimination in Employment Act (ADEA), the

Family Medical Leave Act (FMLA) and the Rehabilitation Act (RHA), claiming acts of

discrimination and retaliation arising out of her employment with the Army at the Walter Reed

Army Medical Center (WRAMC), Washington, D.C.  Specifically, Plaintiff, a former Clinical

Nurse at WRAMC, claims that Defendant subjected her to disparate treatment and a hostile work

environment by making derogatory comments about her age and making unfounded accusations

of poor performance and wrongdoing.  Additionally, Plaintiff claims the Defendant discriminated and retaliated against her after she notified Defendant's Equal Employment Opportunity (EEO) Office about the aforementioned discrimination and harassment, when Defendant terminated her federal employment in February 2005.  The Army investigated Plaintiff's allegations, found them to be without merit and issued a Final Agency Decision notifying Plaintiff of her right to file a civil action.

## II.  SUMMARY OF THE ARGUMENT

Plaintiff's judicial complaint sets forth her allegations in six Counts.  Counts I and IV alleges disparate treatment and hostile work environment discrimination based on disability and age, respectively.  Plaintiff failed to exhaust her administrative remedies as to all issues raised in Counts I and IV, other than her termination.  Specifically, Plaintiff alleges she was subject to harassment from February 2004, to May 23, 2004, her last day present for work at WRAMC and the date in which Plaintiff alleges she suffered her second work related injury.  While absent from work, Defendant notified Plaintiff on September 10, 2004, that it was considering terminating her employment.  Plaintiff made her first contact with an EEO Counselor on November 8, 2004, more than the 45 days in which a federal employee must seek counseling.  Any events predating more than 45 days from November 8, 2004, are untimely and have not been administratively exhausted.  Consequently, Defendant moves to dismiss all untimely claims of discrimination pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Alternatively, if this Court determines that the aforementioned claims are timely, Defendant moves for summary judgment on these claims, because plaintiff cannot establish a

*prima facie* case of discrimination.  First, Plaintiff is not a qualified individual with a disability, nor was she perceived as such by Defendant.  Plaintiff's physical injuries were merely temporary.  Second, Plaintiff's allegations of harassment, even if accepted as true for the purposes of this motioin, are not sufficiently severe or pervasive to constitute a hostile work environment as a matter of law.  Moreover, Defendant took prompt remedial action upon learning the Plaintiff objected to comments made by her co-workers relating to age.  Even assuming, *arguendo*, that Plaintiff can establish a *prima facie* case, Defendant has proffered legitimate, non-discriminatory reasons for its actions that Plaintiff cannot rebut.

Counts I and IV of Plaintiff's complaint also allege disparate treatment based on Defendant's February 2005 decision to terminate Plaintiff's employment.[1]  Similarly, Counts II and V allege that Defendant's February 2005 decision to terminate Plaintiff was based on retaliation for Plaintiff complaining of discrimination when she contacted an EEO counselor in November 2004.  Defendant moves for summary judgment on these claims (Counts I, II, IV and V), because Plaintiff cannot establish a *prima facie* case, as stated *supra*.  Assuming, *arguendo*, that Plaintiff can establish a *prima facie* case, Defendant has proffered legitimate, non-discriminatory reasons for its actions that Plaintiff cannot rebut.  Specifically, Defendant terminated Plaintiff because she was negligent in caring for a patient placing the patient's life in jeopardy.

Lastly, Defendant moves to dismiss Count III of Plaintiff's complaint, brought pursuant

---

[1] Defendant admits, for the purposes of this motion only, that Plaintiff's disparate treatment and retaliation claims pertaining to its *decision to terminate her employment* are timely.  Plaintiff made contact with an EEO counselor on November 8, 2004.  Defendant decided to terminate her in February 2005.

to the FMLA, because Title II of the FMLA does not provide for a cause of action in federal

district court.  Plaintiff was an employee of the Department of the Army.  As such, she is covered

solely by Title II of the FMLA.  It is settled law that Title II of the FMLA does not provide a

judicial cause of action.  Thus, Plaintiff's FMLA claims must be dismissed pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## III.  <u>BACKGROUND</u>

Plaintiff, Madeline Riggiladez, began her employment as a Clinical Nurse with the

Walter Reed Army Medical Center (WRAMC), in Washington, D.C. in December 2002.  Due to

concerns with Plaintiff's level of performance of clinical skills and critical thinking skills,

Plaintiff's supervisor, Major Peterson, informed Plaintiff that she was not performing at an

acceptable level and informed her that she intended to placed her on a performance improvement

plan.  Shortly after this counseling, on January 31, 2004, Plaintiff reported an unwitnessed

on-the-job injury from a fall, causing injury to her right knee, eye and a tooth.  She returned to

work on March 27, 2004, under temporary medical restrictions.  Major Peterson placed Plaintiff

on the performance improvement plan in April 2004.  Despite the issuance of the performance

improvement plan, Plaintiff's performance remained unacceptable.

On May 23, 2004, Plaintiff was assigned to care for a 72-year old female patient

recovering from surgery to repair a heart aneurysm.  This surgery placed the patient at high risk

for a life-threatening heart rhythm.  At the night shift change, the nurse taking over the patient's

care from Plaintiff noted that the patient was having an episode of irregular heart beats, as

reflected on the monitoring equipment ("telemetry monitor").  A review of the patient's care

indicated that Plaintiff had neither reviewed the patient's telemetry report during her shift nor

reported the patient's irregular heartbeat incidents to the duty physician, as required.

Plaintiff later informed Major Peterson that she had re-injured her right knee and injured her lower back and groin on May 23, 2004 (the same day the she was negligent in the performance of her nursing duties). Plaintiff did not return to work thereafter, later claiming that the injuries she allegedly suffered on May 23, 2004, caused her to be unable to return to work until October 1, 2004.

Defendant notified Plaintiff on September 10, 2004, that it proposed to terminate her because of the negligent care she administered on May 23, 2004. Although Plaintiff was expected to return to work during the decision making process after her termination was proposed, she failed to do so. Ultimately, Defendant terminated Plaintiff in February 2005, for her negligence.

## IV.  LEGAL STANDARDS

### A.     Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *District of Columbia Retirement Bd. v. United States,* 657 F. Supp. 428, 431 (D.C. Cir. 1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974), overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The court is not, however, required to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Moreover, the court need not limit itself to the allegations of the complaint. *Hohri v. United*

5

*States,* 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.      Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a case must be dismissed when the complaint fails to state a claim upon which relief can be granted. A district court should grant a defendant's motion to dismiss when it is clear that no relief could result under any facts consistent with the complaint's allegations. *Conley v. Gibson,* 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, in evaluating defendant's motion, the court will assume the truth of all of the factual allegations set forth in the complaint. *Doe v. U.S. Dep't. of Justice,* 753 F.2d 1092, 1102 (D.C. Cir. 1985). While the complaint is to be construed liberally, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept the plaintiff's legal conclusions. *See National Treasury Employees Union v. United States,* 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Kowal v. MCI Communication Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**C.      Motion For Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This remedy is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously.

6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F. 3d 635, 638 (D.C. Cir. 1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247-48.

Summary judgment may be granted upon facts developed during administrative proceedings, the pleadings, and supplemental affidavits. *See Lujan v. National Wildlife Federation*, 497 U.S. 871,884 (1990). A party seeking summary judgment must identify those parts of the record that indicate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248-49.

When a plaintiff presents no evidence to support an essential element of her case, that case is subject to summary judgment. As the Supreme Court noted:

> In our view, the plain language of Rule 56(b) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue to any material fact,' since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts
immaterial.

*Celotex*, 477 U.S. at 322-23.

In an opinion issued the same day as *Celotex*, the Court explained: "If the evidence is

merely colorable,...or is not significantly probative,...summary judgment may be granted....  The

mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient;

there must be evidence on which a jury could reasonably find for Plaintiff."  *Anderson*, 477 U..S.

at 251-52 (internal citations omitted).  In short, *Celotex* and *Anderson* have conditioned a

litigant's right to a day in court on that litigant's ability to show that a practical purpose will be

served by affording her that day.   In the present case, there are no disputed issues of material

fact, and the Army is entitled to summary judgment as a matter of law.

## VI.  <u>ARGUMENT</u>

A.    **Plaintiff's claims of disparate treatment, other than that pertaining to her removal,
and harassment are untimely**.

Because Plaintiff claims discrimination based on disability and age, her exclusive remedy

is the RHA and the ADEA.  *See Brown v. General Services Administration*, 425 U.S. 820, 835

(1976); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991); *Ward v. Kennard*, 133 F.

Supp. 2d. 54, 57 (D.D.C. 2000).  In providing aggrieved federal employees a private right of

action in federal court, the RHA and the ADEA require that federal employees exhaust their

administrative remedies prior to commencing such an action.  <u>Brown</u>, 425 U.S. at 832;

Federal law requires the EEOC to issue regulations governing the filing and processing of

federal employees' discrimination complaints. 42 U.S.C. § 2000e-16(b) (2006). Under these

regulations, an aggrieved employee "must first consult a Counselor" within 45 days of the

alleged discriminatory act. 29 C.F.R. § 1614.105(a). If informal counseling is unsuccessful, upon

its conclusion the employee has 15 days to file a written administrative complaint with the

allegedly discriminating agency. *Id*. § 1614.106(a)-(c). The agency has 180 days to investigate

the complaint. Id. § 1614.106(e)(2). The complainant may amend the complaint any time during

the investigation. *Id*. § 1614.106(d). Upon notice of the conclusion of the agency's investigation,

the complainant has 30 days to request a hearing before an EEOC administrative judge, or to

request a final decision from the agency. Id. § 1614.108(f). A complainant may file a civil action

in federal court only after receipt of an adverse final decision from the agency or the EEOC, or

after a formal complaint has been pending before the agency or the EEOC for at least 180 days.

42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

   These deadlines are construed by the Supreme Court as Congress' intent "to encourage

the prompt processing of all charges of employment discrimination." *Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 109 (2002) (*quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 825

(1980)(internal quotation marks and citation omitted). Therefore, the filing of a complaint that

does not adhere to these procedures must be dismissed, as the Court must demand "strict

adherence to the procedural requirements specified by the legislature." *Id*., at 108 (*quoting*

*Mohasco*, 447 U.S. at 826) (internal quotation marks and citation omitted); *Bowden v. United*

*States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Complainants must timely exhaust these

administrative remedies before bringing their claims to court." (citation omitted)).

   A plaintiff must exhaust all administrative remedies for each discrete discriminatory act

for which she seeks relief. *Morgan*, 536 U.S. at 113. The Supreme Court has held that "discrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*.   A plaintiff may not combine a series of acts into one claim of discrimination if a complaint alleging any one of the acts on its own would be untimely. *Id*. at 113-14.   Thus, when a complainant files an administrative complaint, she may only allege discriminatory acts about which the complainant sought consultation with the EEO and that occurred within 45 days prior to this consultation. *Id*.; 29 C.F.R. §§ 1614.105(a), 1614.106(a)-(c).

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115; *See also Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003).  Such a claim, the Court said, "is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 116; *Singletary* 351 F.3d at 526.   Thus, a charge alleging a hostile work environment claim will not be time barred so long as all acts that constitute the claim are part of the same unlawful employment practice and *at least one act falls within the time period*. *Id*. at 527 (*citing Morgan*, at 536 U.S. at 122)(emphasis added).

Plaintiff alleges "ongoing harassment and discriminatory treatment from her supervisors and coworkers on account of her age and perceived disability status" from her return to work in February 2004. Plt.'s Complt. ¶ 7.  Plaintiff claims to have injured herself while at work in May 2004. Plt.'s Complt. ¶ 9.  She further claims that she missed work from the date of the injury through September 2004. Plt.'s Complt ¶ 9 & 10.  Plaintiff received a notice of removal on September 10, 2004, and never returned to work thereafter. ROI 208.  Thus, the last possible day in which Plaintiff could have been subject to a hostile work environment was the last day she

10

was present for work - May 23, 2004.

Plaintiff was required to contact an EEO counselor within 45 days of the last act that constituted the unlawful employment practice, i.e., within 45 days of May 23, 2004.[2]  Thus, Plaintiff must have sought counseling by July 7, 2004.  Because it is undisputed that Plaintiff did not seek counseling until November 8, 2004, nearly four months late, she has failed to exhaust her administrative remedies.

**B.     Plaintiff cannot establish that Defendant regarded her as having any impairments that substantially limited any of her major life activities**

Plaintiff alleges that from February 2004 through the termination of her employment in February 2005, Defendant perceived Plaintiff to be a "qualified individual with a disability."  Plaintiff asserts that the alleged perception was related to the following injuries she claimed resulted from a work place injury on January 31, 2004, when she injured her right knee, sustained a vitreous detachment of her left eye and injured a tooth.  (Complt. ¶¶ 26, 6)   Plaintiff cannot establish a *prima facie* case and, therefore, her claims fail, because she was not disabled, was not "otherwise qualified" and her termination did not give rise to an inference of discrimination.

To establish a *prima facie* case of prohibited employment discrimination under the RHA based on disparate treatment, Plaintiff must show that she "'[has] a disability within the meaning of the [RHA]; that [she] was 'qualified' for the position with or without reasonable accommodation; and that [she] suffered an adverse employment action because of [her] disability." Duncan v. Washington Met. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001).

_____

[2] Although Plaintiff does not specifically allege an act of harassment on May 23, 2004, viewing Plaintiff's complaint in the light most favorable to her, May 23, 2004, is the operative day for purposes of seeking timely counseling.

A person is disabled under the RHA if she "has a physical or mental impairment which substantially limits one or more of [her] major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). (emphasis added). In order to establish that she was "regarded as" disabled, the claim Plaintiff alleges in her judicial complaint, Plaintiff must show that (1) she was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of her major life activities. *See Mack v. Strauss*,134 F. Supp. 2d 103, 110 (D.C. Cir. 2001).[3]

Thus, Plaintiff must prove that she is impaired in a way that "substantially limits a major life activity." *See Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 195 (2002). As the Court emphasized, "merely having an impairment does not make [an individual] disabled." *Id*. Instead, a plaintiff must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial." *Id*. at 195-96. To qualify as "substantial," "the impairment's impact must also be permanent or long-term." *Id.*; *compare Paegle v. Dep't of the Interior*, 813 F.Supp. 61, 64 (D.D.C. 1993), *aff'd*, 24 F.3d 1464 (D.C. Cir. 1994) ("The [Rehabilitation] Act identifies a handicap as a severe disability of a permanent nature"). In sum, the terms of the disability definition must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota*, supra, 534 U.S. at 195. The same stringent standard applies when a plaintiff asserts she is "disabled"

---

[3] *See also, Sutton v. United Airlines*, 527 U.S. 471, 489 (1999) ("There are two apparent ways in which individuals may [be regarded as disabled]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.").

under the "regard as" prong of the definition. *See Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004). That is, as part of her *prima facie* case, Plaintiff must establish that her supervisors "regarded" her as substantially limited in one or more major life activities.

Plaintiff purportedly sustained injuries on January 31, 2004, to her right knee, her eye and a tooth. Less than two months later, Plaintiff's physician cleared her to return to work on March 27, 2004, with the following temporary restrictions related solely to her right knee pain: "Limited squatting; No lifting over 15 lbs; Limited standing." These restrictions were in effect for four weeks. Likewise, Plaintiff's alleged injuries occurring on May 23, 2004, were similarly temporary in nature; allowing Plaintiff to return to work no later than October 1, 2004. Plaintiff never returned to work, nor did she provide documentation to Major Peterson to justify her absence or request leave, despite Peterson's telephonic requests to Plaintiff. As a result, Plaintiff was carried as absent without leave (AWOL). TR. pp. 227-32, 394.

Lifting and standing are both  major life activities. 29 C.F.R. 1630.2. However, Plaintiff's restrictions as to these functions were only temporary, short-term restrictions, not long-term or permanent, as required by *Toyota*. Furthermore, Plaintiff testified that none of the residual effects from her injuries interfered in the performance of her duties. TR pp. 20-21. Therefore, Plaintiff is unable to establish that she was "regarded as" disabled subsequent to the first injury.  Plaintiff cannot establish that Defendant "mistakenly believe[d] [she had] a physical impairment that substantially limits one or more major life activities" or "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Haynes*, 392 F.3d at 482 (*quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). Accordingly, she is unable to establish a prima *facie case* of disability discrimination. Plaintiff's

claims relating to disability discrimination (Counts I and II) must be dismissed, or in the alternative, summary judgment granted to Defendant.

### C.   Plaintiff cannot establish the alleged harassment was sufficiently severe or pervasive

A claim of discriminatory or retaliatory harassment requires that the harassment be severe or pervasive.  *See Bryant v. Brownlee*, 265 F. Supp. 2d 52, 67 (D.D.C. 2003).  Under such standards, a workplace is "hostile" when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  In determining whether the alleged conduct is sufficiently severe or pervasive, the court must consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employee's performance.  *Faragher v. Boca Raton*, 524 U.S. 775 (1998).  As the Supreme Court has emphasized in the similar context of sexual harassment, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. at 788 (citations omitted).  Indeed, the standards are intended to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id*. (citations omitted).

Applying these standards to plaintiff's allegations leaves no doubt that her claim must fail. Between December 2002 and July 2003, Plaintiff reported to her initial first-line supervisor,

14

Major Walker, and to Ms. Rodondi, while serving as interim head nurse, only sporadic instances of age-related comments made to, or about her, by co-workers.  For example, Plaintiff complains that another nurse called her "old lady" (TR 47-54) and on another occasion a nurse stated "[y]ou know how older people are, it takes them a longer time for them to comprehend a computer. Remember how much trouble you had Madeline?"  TR 57-60.  Major Walker immediately responded by having the co-worker apologize to Plaintiff.  TR. p. 55  After Major Peterson arrived, Plaintiff mentioned to her that some comments were being made about her age.  In response, Peterson scheduled anti-discrimination training for the Ward 46 staff.  TR. pp. 234 - 236.  After the training, the only other age-related concern Plaintiff raised with Peterson was she felt she was being excluded from social conversations among the younger, single nurses.  TR. p. 236.  Again, Peterson responded and told the younger, military nurses to limit socializing to break times.  TR. p. 237.  The incidents of which plaintiff complains are too mild and too common in many workplaces to constitute "an abusive working environment" that provides a basis for a hostile work environment claim.  *See Faragher*, 524 U.S. at 787-88; *Oncale*, 523 U.S. at 78.

Moreover, Defendant took prompt, remedial action upon Plaintiff informing management of these comments.  Defendant had the offending co-worker apologize and held anti-discrimination training.  TR. pp. 234-37.  Plaintiff's claim fails because Defendant took prompt remedial action.  *See Hodges v. Washington Tennis Sports Serv. Intern., Inc.*, 870 F. Supp. 386, 388 (D.D.C. 1994).

      **D.**      **Plaintiff Cannot establish a causal connection between her protected activity and her termination**

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).[4] To prove a causal connection, a plaintiff must show that the responsible officials had knowledge of the protected activity and that the adverse action occurred "shortly after" the protected activity. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006). When a plaintiff relies on temporal proximity to prove a causal connection, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In fact, the Court held that a three to four month disparity was insufficient to show casual connection. *Id*. (*citing Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient)). Furthermore, employers are not required to suspend a personnel action already in progress merely because an employee initiates a discrimination complaint. "[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*.

In the case at bar, Major Peterson first sought assistance from Management Employee Relations (MER) regarding Plaintiff's situation in July 2004. ROI, p. 192. Plaintiff received Peterson's Notice of Proposed Removal on September 10, 2004. ROI, p. 208. Plaintiff did not initiate her EEO complaint, in writing through her attorney, until November 8, 2004. Thus, due

---

[4] An "adverse action" must be such that a "...reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2411 (2006),(quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(internal quotations omitted).

to the undisputed sequence of events, Plaintiff is unable to prove a causal connection.  She made

her first contact with an EEO counselor on November 8, 2004.  Major Peterson's initiation of the

removal action predated this contact by two months.  Plaintiff, therefore, cannot establish a *prima

facie* case of retaliation.

Although Colonel Endinger's February 9, 2005, decision to implement Major Peterson's

proposed action post-dated Plaintiff's initial contact, Plaintiff cannot dispute that the removal

process was set in motion two months before her initial EEO contact.  Thus, in accordance with

*Breeden*, Plaintiff cannot establish a *prima facie* case of retaliation even as to the removal

decision.  "Employers need not suspend previously planned transfers upon discovering that a

Title VII suit has been filed, and their proceeding along lines previously contemplated, though

not yet definitively determined, *is no evidence whatever of causality*." *Breeden*, 532 U.S. at 272

(emphasis added).

>    **E.    Plaintiff cannot establish that the Defendant's legitimate, nondiscriminatory
>    reasons for terminating her employment was a pretext for prohibited age
>    discrimination or retaliation**

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for

employment who are at least 40 years of age . . . in executive agencies . . . be made free from any

discrimination based on age." 29 U.S.C. § 633a(a).[5]  To survive summary judgment, Plaintiff

must resort to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973); *See Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000); *Carter v. George*

---

[5] Plaintiff  erroneously cites to 29 U.S.C. § 626(c)(1) as the jurisdictional basis of her
ADEA claims; however, these provisions apply only to private sector employees.  Rather, 29
U.S.C. § 633a is the "stand alone" provision of the ADEA that applies solely to federal
government employees.

*Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the *McDonnell Douglas* framework applies to ADEA claims).[6]

Defendant, however, has offered a very legitimate reason, unrelated to Plaintiff's age, for its action:  Plaintiff failed to properly monitor the condition of a 72-year old patient recovering from heart surgery, thus placing the patient at serious risk.  The Plaintiff can offer no evidence disputing the Defendant's account of what transpired on May 23, 2004.  She admitted that she did not make any reports to a physician about the patient during her shift.  TR. p. 100. Plaintiff was terminated for a legitimate, nondiscriminatory reason, wholly unrelated to her age, alleged disability or EEO status.  Hence, Defendant is entitled to summary judgment.

**F.    The Court should dismiss Court III of the Complaint because Title II of the FMLA, applicable to Plaintiff as a federal employee, does not contain an express provision for a private right of action to enforce the leave rights**

The Family Medical Leave Act allows employees to take periods of leave from their jobs for various health and family related reasons.  As enacted, the FMLA contains two Titles: Title I, codified 29 U.S.C. §§ 2601-2916 and Title II, codified 5 U.S.C. §§ 6381-6387.  Title I governs leave for private employees and federal employees not covered by Title II.  These employees are provided up to twelve weeks per year of unpaid leave if they provide their employers adequate notice and obtain medical certification of the need to take time off for a qualifying personal or family medical condition. 29 U.S.C. §§ 2612(a), 2613.  Federal employees covered by Title I include postal service employees and employees employed on a temporary or intermittent basis.

---

[6] Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a *prima facie* case, meaning she must establish "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  It is undisputed that Plaintiff was in the protected class of at least 40 years old and that she suffered the adverse employment action of removal effective February 20, 2005.

5 U.S.C. § 2105(e), § 6381(1)(A), respectively.

Title II of the FMLA guarantees the same substantive rights given private sector employees and Title I federal employees. 5 U.S.C. §§ 6381-6387. Generally, Title II applies to any federal employee who has worked more than twelve months in federal service, who is not a postal employee. *Id.*; *see also Ikossi v. England,* 406 F. Supp. 2d 23, 28 (D.D.C. 2005); *Mann v. Haigh*, 120 F.3d 34 (4th Cir. 1997). While Title I and Title II employees are afforded equivalent rights to leave time, Title I and Title II differ significantly regarding the ability of employees to enforce those rights. Section 107 of Title I provides that employers who violate the FMLA will be liable to aggrieved employees for monetary damages and equitable relief. 29 U.S.C. § 2617. Further, section 107 permits the employee to bring a civil action against an employer in federal or state court. 29 U.S.C. § 2617(a)(2). In contrast, Title II of the FMLA contains no analogous provisions. *See Mann* 120 F.3d at 37-38. (Title II does not contain an express provision for a private right of action to enforce the leave rights there granted.).

The Plaintiff was "hired by, and began work as a nurse for, Defendant at the Walter Reed Army Medical Center . . . ." Complt. ¶ 5. The U. S. Army is headed by Francis Harvey, who was appointed by the President. Thus, Plaintiff falls within the definition of an employee in 5 U.S.C. § 2105, and Title II of the FMLA. Accordingly, Plaintiff may not bring a claim relating to rights under the FMLA, Title II, in this Court. This Court lacks subject matter jurisdiction over this claim and it must be dismissed.[7]

---

[7] Plaintiff was not without recourse for her FMLA allegation. A federal employee covered by Title II of the FMLA may file a grievance provided by union agreement or internal grievance procedures. *Mann* 120 F.3d at 38. Additionally, FMLA claims may be brought before the MSPB as part of an otherwise appealable action if the appealable action is leave-related. *See Ellshoff v. Dep't of Interior*, 76 MSPR 54, 74 (1997); *Fairley v. US Postal Service*, 82 MSPR 588, 591 (1999).

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant' motion ti dismiss, in part, and for summary judgment.

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
STEVEN M. RANIERI
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.,
Washington, D.C.  20530
(202) 353-9895


OF COUNSEL:
Louise Schmidt
U.S. Army Litigation Division
901 N. Stuart Street, Suite 400
Arlington, VA  22203-1837