IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MADELINE RIGGILADEZ,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**HON. FRANCIS J. HARVEY,** )<br>**Secretary of the Army,** )<br>)<br>**Defendant.** )<br>) | Civil Action No. 06-1337 (RJL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S RENEWED MOTION TO DISMISS, OR
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Francis J. Harvey, Secretary of the Army, Defendant, by his attorneys, hereby submits this Memorandum in support of his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I. INTRODUCTION

Plaintiff filed her original complaint against the Secretary of the Army ("Defendant" or "the Army") in the United States District Court for the District of Columbia. Plaintiff's original complaint was brought under the Age Discrimination in Employment Act (ADEA), the Family Medical Leave Act (FMLA) and the Rehabilitation Act (RHA), claiming acts of discrimination and retaliation arising out of her employment with the Army at the Walter Reed Army Medical Center (WRAMC), Washington, D.C. Generally, Plaintiff claimed that Defendant subjected her to disparate treatment and a hostile work environment by making derogatory comments about her age and making unfounded accusations of poor performance and wrongdoing. Additionally,

Plaintiff claimed the Defendant discriminated and retaliated against her after she notified Defendant's Equal Employment Opportunity (EEO) Office about the aforementioned discrimination and harassment, when Defendant prevented her from returning to work in October 2004, after an alleged work related injury, and terminated her federal employment in February 2005.

On December 6, 2006, Defendant moved to dismiss the complaint, in part, and moved for summary judgment on the remaining claims. In response, Plaintiff amended her complaint on December 18, 2006, abandoning the claims Defendant had sought to dismiss, i.e., her harassment and FMLA claims. Plaintiff's amended complaint re-alleges the aforementioned disparate treatment and retaliation claims, pursuant to the RHA and ADEA. Defendant respectfully moves to dismiss, or in the alternative, for summary judgment regarding the claims that now comprise Plaintiff's amended complaint.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff, Madeline Riggiladez, began her employment as a Clinical Nurse with the Walter Reed Army Medical Center (WRAMC), in Washington, D.C., in December 2002. Due to concerns with Plaintiff's level of performance of clinical skills and critical thinking skills, Plaintiff's supervisor, Major Peterson, informed Plaintiff that she was not performing at an acceptable level and informed her that she intended to placed her on a performance improvement plan. Shortly after this counseling, on January 31, 2004, Plaintiff reported an unwitnessed on-the-job injury from a fall, causing injury to her right knee, left eye and a tooth. She returned to work on March 27, 2004, under temporary medical restrictions. Major Peterson placed

Plaintiff on the performance improvement plan in April 2004. Despite the issuance of the performance improvement plan, Plaintiff's performance remained unacceptable.

On May 23, 2004, Plaintiff was assigned to care for a 72-year old female patient recovering from surgery to repair a heart aneurysm. This surgery placed the patient at high risk for a life-threatening heart rhythm. At the night shift change, the nurse taking over the patient's care from Plaintiff noted that the patient was having an episode of irregular heart beats, as reflected on the monitoring equipment ("telemetry monitor"). A review of the patient's care indicated that Plaintiff had neither reviewed the patient's telemetry report during her shift nor reported the patient's irregular heartbeat incidents to the duty physician, as required.

Plaintiff later informed Major Peterson that she had re-injured her right knee and injured her lower back and groin on May 23, 2004 (the same day the she was negligent in the performance of her nursing duties). Plaintiff did not return to work thereafter, later claiming that the injuries she allegedly suffered on May 23, 2004, caused her to be unable to return to work until October 1, 2004.

Defendant notified Plaintiff on September 10, 2004, that it proposed to terminate her because of the negligent care she administered on May 23, 2004. Although Plaintiff was expected to return to work, or otherwise provide her supervisors with appropriate documentation excusing her absence, during the decision making process after her termination was proposed, she failed to do so. Ultimately, Defendant terminated Plaintiff in February 2005, for her negligence.

    **B.**    **Procedural Background**

Plaintiff, through a letter from her attorney, sought counseling with Equal Employment

Opportunity ("EEO") Office on November 8, 2004, and filed a formal administrative complaint on January 25, 2005. The Army investigated Plaintiff's allegations, found them to be without merit and issued a Final Agency Decision notifying Plaintiff of her right to file a civil action or to file an appeal with the U.S. Merit Systems Protection Board. Plaintiff chose to bring a civil action, and brought her judicial complaint on July 27, 2006.

Plaintiff's original complaint set forth her allegations in six Counts. Counts I and IV alleged hostile work environment discrimination based on disability and age, respectively. Specifically, Plaintiff alleged she was subjected a hostile work environment from February 2004, to May 23, 2004, her last day present for work at WRAMC and the date in which Plaintiff alleges she suffered her second work related injury. Defendant moved to dismiss Plaintiff's hostile work environment claim for failure to exhaust administrative remedies. In response, Plaintiff amended her complaint and abandoned this claim.

Counts I and IV also alleged disparate treatment based on Defendant's February 2005 decision to terminate Plaintiff's employment. Plaintiff's disparate treatment claim for wrongful termination is re-alleged in Plaintiff's amended complaint, and appears as Count I (disability discrimination) and Count III (age discrimination).

Counts II and V of Plaintiff's original complaint alleged that Defendant retaliated against Plaintiff for filing an EEO complaint. Specifically, Plaintiff alleged that Defendant retaliated against her by not allowing her to return to work and, therefore, receive a salary, between October 2004 (the date Plaintiff claims she was medically cleared to return to work), and February 2005 (the effective date of the termination). Plaintiff also alleged that Defendant's February 2005 decision to terminate her employment was retaliatory. Counts II and V of

Plaintiff's original complaint now appear as Count II and Count IV in Plaintiff's amended complaint.

Lastly, Plaintiff's amended complaint abandons Count III of Plaintiff's original complaint, brought pursuant to the Family and Medical Leave Act (FMLA). Defendant previously moved to dismiss this count, because Title II of the FMLA, which applied to Plaintiff as a former employee of the Department of the Army, does not provide for a cause of action in federal district court.

### III.  SUMMARY OF THE ARGUMENT

Counts I and II of Plaintiff's amended complaint allege disparate treatment and retaliation based on disability, respectively. Defendant moves to dismiss or, in the alternative, for summary judgment on Count I and II, because Plaintiff cannot establish that she is a qualified individual with a disability, nor was she perceived as such by Defendant. Plaintiff's physical injuries were merely temporary. Thus, she cannot establish a *prima facie* case of disability discrimination or retaliation under the RHA.

Counts II and IV of Plaintiff's amended complaint allege that Defendant prevented her from returning to work and ultimately terminated Plaintiff's employment in retaliation for Plaintiff filing an administrative complaint of discrimination. Plaintiff's retaliation claims fail, however, because plaintiff cannot establish a *prima facie* case of retaliation. Plaintiff cannot establish, as a matter of law, the requisite causal connection between the putative retaliatory actions and her protected activity. Hence Counts II and IV should be dismissed, or summary judgment granted to Defendant.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of disability

discrimination or retaliation, Defendant moves for summary judgment on these and the remaining claim (brought pursuant to the ADEA) contained in Plaintiff's amended complaint. Defendant has proffered legitimate, non-discriminatory reasons for its actions that Plaintiff cannot rebut. Specifically, Defendant terminated Plaintiff because she was negligent in caring for a patient placing the patient's life in jeopardy. Additionally, Defendant did not prevent Plaintiff from returning to work and receiving pay during any periods between October 2004, and early January 2005. When, on January 5, 2006, Plaintiff informed Defendant of her intention to return to work the next day, Defendant approved paid administrative leave for Plaintiff for the January 5, 2005 pay period through the date of her termination in February 2005. Thus, Defendant did not prevent Plaintiff from returning to work or being appropriately compensated.

## IV. STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## V. LEGAL STANDARDS

### A. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a case must be dismissed when the complaint fails to state a claim upon which relief can be granted. A district court should grant a defendant's motion to dismiss when it is clear that no relief could result under any facts consistent with the complaint's allegations. *Conley v. Gibson,* 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, in evaluating defendant's motion, the court will assume the truth of all of the factual allegations set forth in the complaint. *Doe v. U.S. Dep't. of Justice,* 753 F.2d 1092, 1102 (D.C. Cir. 1985). While the

complaint is to be construed liberally, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept the plaintiff's legal conclusions. *See National Treasury Employees Union v. United States,* 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Kowal v. MCI Communication Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

>   B.   <u>Motion For Summary Judgment</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This remedy is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F. 3d 635, 638 (D.C. Cir. 1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247-48.

Summary judgment may be granted upon facts developed during administrative proceedings, the pleadings, and supplemental affidavits. *See Lujan v. National Wildlife Federation,* 497 U.S. 871,884 (1990). A party seeking summary judgment must identify those parts of the record that indicate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.  The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248-49.

When a plaintiff presents no evidence to support an essential element of her case, that case is subject to summary judgment.  As the Supreme Court noted:

> In our view, the plain language of Rule 56(b) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322-23.

In an opinion issued the same day as *Celotex*, the Court explained: "If the evidence is merely colorable,...or is not significantly probative,...summary judgment may be granted....  The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for Plaintiff." *Anderson*, 477 U..S. at 251-52 (internal citations omitted).  In short, *Celotex* and *Anderson* have conditioned a litigant's right to a day in court on that litigant's ability to show that a practical purpose will be served by affording her that day.   In the present case, there are no disputed issues of material fact, and the Army is entitled to summary judgment as a matter of law.

## VI. ARGUMENT

### A. Plaintiff cannot establish that Defendant regarded her as having any impairments that substantially limited any of her major life activities

Plaintiff alleges that from February 2004 through the termination of her employment in February 2005, Defendant perceived Plaintiff to be a "qualified individual with a disability." Plaintiff asserts that the alleged perception was related to the following injuries she claimed resulted from a work place injury on January 31, 2004, when she injured her right knee, sustained a vitreous detachment of her left eye and injured a tooth. (Complt. ¶¶ 26, 6)  Plaintiff cannot establish a *prima facie* case and, therefore, her claims fail, because she was not disabled, was not "otherwise qualified" and her termination did not give rise to an inference of discrimination.

To establish a *prima facie* case of prohibited employment discrimination under the RHA based on disparate treatment, Plaintiff must show that she "'[has] a disability within the meaning of the [RHA]; that [she] was 'qualified' for the position with or without reasonable accommodation; and that [she] suffered an adverse employment action because of [her] disability." Duncan v. Washington Met. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001).

A person is disabled under the RHA if she "has a physical or mental impairment which substantially limits one or more of [her] major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). (emphasis added).  In order to establish that she was "regarded as" disabled, the claim Plaintiff alleges in her judicial complaint, Plaintiff must show that (1) she was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of her major

life activities. *See Mack v. Strauss*,134 F. Supp. 2d 103, 110 (D.C. Cir. 2001).[1]

Thus, Plaintiff must prove that she is impaired in a way that "substantially limits a major life activity." *See Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 195 (2002). As the Court emphasized, "merely having an impairment does not make [an individual] disabled." *Id*. Instead, a plaintiff must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial." *Id*. at 195-96. To qualify as "substantial," "the impairment's impact must also be permanent or long-term." *Id.*; *compare Paegle v. Dep't of the Interior*, 813 F.Supp. 61, 64 (D.D.C. 1993), *aff'd*, 24 F.3d 1464 (D.C. Cir. 1994) ("The [Rehabilitation] Act identifies a handicap as a severe disability of a permanent nature"). In sum, the terms of the disability definition must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota*, supra, 534 U.S. at 195. The same stringent standard applies when a plaintiff asserts she is "disabled" under the "regard as" prong of the definition. *See Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004). That is, as part of her *prima facie* case, Plaintiff must establish that her supervisors "regarded" her as substantially limited in one or more major life activities.

Plaintiff purportedly sustained injuries on January 31, 2004, to her right knee, her eye and a tooth. Less than two months later, Plaintiff's physician cleared her to return to work on March 27, 2004, with the following temporary restrictions related solely to her right knee pain: "Limited

---

[1] *See also, Sutton v. United Airlines*, 527 U.S. 471, 489 (1999) ("There are two apparent ways in which individuals may [be regarded as disabled]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.").

squatting; No lifting over 15 lbs; Limited standing." These restrictions were in effect for four weeks. Likewise, Plaintiff's alleged injuries occurring on May 23, 2004, were similarly temporary in nature; allowing Plaintiff to return to work no later than October 1, 2004. Plaintiff never returned to work, nor did she provide documentation to Major Peterson to justify her absence or request leave, despite Peterson's telephonic requests to Plaintiff. As a result, Plaintiff was carried in a non-pay status. TR. pp. 227-32, 394.

Lifting and standing are both major life activities. 29 C.F.R. 1630.2. However, Plaintiff's restrictions as to these functions were only temporary, short-term restrictions, not long-term or permanent, as required by *Toyota*. Furthermore, Plaintiff testified that none of the residual effects from her injuries interfered in the performance of her duties. TR pp. 20-21. Therefore, Plaintiff is unable to establish that she was "regarded as" disabled subsequent to the first injury. Plaintiff cannot establish that Defendant "mistakenly believe[d] [she had] a physical impairment that substantially limits one or more major life activities" or "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Haynes*, 392 F.3d at 482 (*quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). Accordingly, she is unable to establish a prima *facie case* of disability discrimination. Plaintiff's disability claims must be dismissed, or in the alternative, summary judgment granted to Defendant.

    **B.    Plaintiff Cannot establish a causal connection between her protected activity and her termination**

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) a causal connection exists

between the protected activity and the adverse action. *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).[2] To prove a causal connection, a plaintiff must show that the responsible officials had knowledge of the protected activity and that the adverse action occurred "shortly after" the protected activity. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006). When a plaintiff relies on temporal proximity to prove a causal connection, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In fact, the Court held that a three to four month disparity was insufficient to show casual connection. *Id*. (*citing Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient)). Furthermore, employers are not required to suspend a personnel action already in progress merely because an employee initiates a discrimination complaint. "[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*.

In the case at bar, Major Peterson first sought assistance from Management Employee Relations (MER) regarding Plaintiff's situation in July 2004. ROI, p. 192. Plaintiff received Peterson's Notice of Proposed Removal on September 10, 2004. ROI, p. 208. Plaintiff did not initiate her EEO complaint, in writing through her attorney, until November 8, 2004. Thus, due to the undisputed sequence of events, Plaintiff is unable to prove a causal connection. She made her first contact with an EEO counselor on November 8, 2004. Major Peterson's initiation of the

---

[2] An "adverse action" must be such that a "...reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2411 (2006),(quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(internal quotations omitted).

removal action predated this contact by two months. Plaintiff, therefore, cannot establish a *prima facie* case of retaliation. Major Peterson's initiation of the removal action predated this contact by two months. Thus, due to the undisputed sequence of events, Plaintiff is unable to prove a causal connection, and accordingly, she is unable to establish a prima facie case of retaliation.

Although Colonel Endinger's February 9, 2005, decision to implement Major Peterson's proposed action post-dated Plaintiff's initial EEO contact, Plaintiff cannot dispute that the removal process was set in motion two months before the contact. Thus, in accordance with *Breeden*, Plaintiff cannot establish a *prima facie* case of retaliation even as to the removal decision. "Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, *is no evidence whatever of causality*." *Breeden*, 532 U.S. at 272 (emphasis added).

Plaintiff allegation of retaliation pertaining to her alleged inability to return to work between October 2004, and February 2005, also fails because she cannot establish a causal connection between the employment action and her protected activity. After Plaintiff alleged workplace injury on May 23, 2004, she filed for workers' compensation benefits and received 45 days of continuation pay. When this 45-day period expired, she began receiving wage compensation benefits. Plaintiff remained away from work while she received the continuation pay and wage compensation benefits.

Major Peterson issued the notice of proposed removal to Plaintiff on September 10, 2004, The notice informed Plaintiff of the proposed actions, but did not suspend her from work, place her on a paid leave status, or otherwise lead her to believe that she could not return to work and

receive pay. ROI p. 210-13.

Plaintiff's workers' compensation benefits ended on September 30, 2004. Defense Exhibit 4. Plaintiff informed a co-worker that she intended to return to work on October 1, 2004; however, Plaintiff did not inform her supervisor that she intended to return to work and did not do so. TR, p. 40-43. Moreover, Plaintiff informed Defendant's Federal Employees Compensation Act ("FECA") Coordinator that she would not return to work in October because she scheduled a surgery for a medical condition unrelated to her work. Defense Exhibit 4. She also informed her supervisor that she needed additional time to respond to the proposed removal because she was having the surgery and was stressed. TR. p. 383. Plaintiff did not inform Defendant that she intended to return to work until her attorney's January 5, 2005 letter.[3] ROI, p. 241.

Hence, Defendant did not prevent Plaintiff from returning to work. Plaintiff's former supervisors continued to carry her in a non-pay status because they understood she was receiving worker's compensation benefits. They also knew Plaintiff reported that, between September and November 2004, she was too sick to reply to the notice of proposed removal in a timely manner, much less to report for duty. This occurred, however, *prior to* Plaintiff initiating her EEO complaint on November 8, 2004. ROI, p. 197-206. Thus, Plaintiff cannot establish a causal connection between her protected activity and her non-pay status.

---

[3] Plaintiff, through her attorney, informed Defendant on January 5, 2005, that she intended to return to work on January 6, 2005, but failed to do so. Because this was Plaintiff's first expression of an intention to return to work, Defendant ultimately placed her on a paid administrative leave status beginning January 5, 2005, through the effective date of her removal. ROI, pp. 241.

### C. Plaintiff cannot establish that the Defendant's legitimate, nondiscriminatory reasons for terminating her employment was a pretext for prohibited age discrimination or retaliation

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a). To survive summary judgment, Plaintiff must resort to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *See Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the *McDonnell Douglas* framework applies to ADEA claims).[4]

Defendant, however, has offered a very legitimate reason, unrelated to Plaintiff's age, for its action: Plaintiff failed to properly monitor the condition of a 72-year old patient recovering from heart surgery, thus placing the patient at serious risk. The Plaintiff can offer no evidence disputing the Defendant's account of what transpired on May 23, 2004. She admitted that she did not make any reports to a physician about the patient during her shift. TR. p. 100. Plaintiff was terminated for a legitimate, nondiscriminatory reason, wholly unrelated to her age, alleged disability or EEO status. Hence, Defendant is entitled to summary judgment.

Likewise, Defendant has offered a very legitimate reason for not paying Plaintiff during the weeks between the proposal and January 5, 2005, to wit: Plaintiff did not come to work and

---

[4] Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a *prima facie* case, meaning she must establish "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). It is undisputed that Plaintiff was in the protected class of at least 40 years old and that she suffered the adverse employment action of removal effective February 20, 2005.

was properly placed in a non-paid leave status. The notice of proposed removal did not suspend her from work or place her on a paid leave status. ROI p. 210-13. Nothing in the proposal letter could lead Plaintiff to believe that she could not return to work and receive pay. *Id*.

    Plaintiff missed work from May through September 2004, while she pursued her workers' compensation claim. Plaintiff received continuation pay for the first 45 days of her absence and then wage compensation benefits until September 30, 2004.[5] Although Plaintiff told a co-worker that she intended to return to work on October 1, 2004, she did not inform her supervisor and she did not return to work. Moreover, (after being provided the notice of proposed removal) Plaintiff affirmatively represented that she was not going to return to work, because she was planing to have a surgery for a medical condition unrelated to work. Thus, Plaintiff's subsequent absence resulted from a non-work related surgery. Defendant placed Plaintiff on AWOL status during this period, because she did not indicate that she intended to return to work. Plaintiff first expressed an intent to return to work on January 5, 2005. Subsequently, Defendant adjusted Plaintiff's pay status from AWOL to paid administrative leave from January 5, 2005, through the date of her removal. Defendant's decision not to pay Plaintiff while she was voluntarily absent is legitimate and nondiscriminatory.

## CONCLUSION

    For the foregoing reasons, the Court should grant Defendant' motion to dismiss or, in the alternative, grant summary judgment to Defendant.

---

[5] The Department of Labor ultimately denied Plaintiff's FECA claim. Plaintiff has not reimbursed Defendant for the continuation pay and wage compensation benefits provided her during DOL adjudication of her claim.

          Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
STEVEN M. RANIERI
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

OF COUNSEL:
Louise Schmidt
U.S. Army Litigation Division
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837