# INVESTIGATIVE FILE



## ARWRAMC04NOV07148

DOCKET NUMBER

### MADELINE L. RIGGILADEZ

COMPLAINANT
**WALTER REED ARMY MEDICAL CENTER**
**WASHINGTON, DC**

ORGANIZATION FILED AGAINST

**DEPARTMENT OF THE ARMY**

COMPONENT FILED AGAINST

WARNING: All information contained in this report is protected by the Privacy Act of 1974 and must be dealt with accordingly.

# DEPARTMENT OF DEFENSE
## CIVILIAN PERSONNEL MANAGEMENT SERVICE
## OFFICE OF COMPLAINT INVESTIGATIONS

# FORMAL COMPLAINT OF DISCRIMINATION

For use of this form, see AR 690-600; the proponent agency is OSA

## PRIVACY ACT STATEMENT (5 U.S.C. §552a)

2005 JAN 20 AM 8:13

| | |
|---|---|
| **AUTHORITY:** | Public Law 92-261 |
| **PRINCIPAL PURPOSE:** | Used for formal filing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, and/or reprisal by Department of the Army civilian employees, former employees, applicants for employment, and some contract employees. |
| **ROUTINE USES:** | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Employment Opportunity Commission) regarding the status of an EEO complaint or appeal; or (d) to adjudicate an EEO complaint or appeal. |
| **DISCLOSURE:** | Voluntary, however, failure to complete all appropriate portions of the form may lead to rejection of complaint on the basis of inadequate data on which to continue processing. |

| 1. NAME (Last, First, Middle Initial) | 2. SOCIAL SECURITY NUMBER | 3. HOME TELEPHONE NUMBER |
|---|---|---|
| Diggiladez, Madeline, L. | | |

| 4. HOME ADDRESS | 5. DO YOU CURRENTLY WORK FOR THE FEDERAL GOVERNMENT? |
|---|---|
| 5793 Burke Towne Court Burke, VA 22015 | ☐ NO  ☑ YES (If yes, complete 6, 6a, 6b, 7 and 8.) |

| 6. NAME OF AGENCY WHERE CURRENTLY EMPLOYED | 6a. WORK TELEPHONE NUMBER |
|---|---|
| Department of Defense, Walter Reed Army Medical Center | 202-782-1446 |

| 6b. EMPLOYER'S ADDRESS (Complete information to include office symbol.) | 7. PAY PLAN/SERIES/GRADE |
|---|---|
| Walter Reed Army Medical Center Washington, D.C. 20307-5001 6900 Georgia Ave, N.W. | GS-11 (GS-0610-11) |
| | 8. CURRENT JOB TITLE |
| | Resident Nurse/Clinical Nurse |

## SECTION I - COMPLAINT INFORMATION

**9. REASON YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** (Check below all that apply. Identify specific race, color, sex, age, religion, national origin, and/or disability.)

☑ RACE Black (50%)   ☐ COLOR _____   SEX ☐ Male ☐ Female   ☑ AGE (56)

DATE OF BIRTH /48   ☐ NATIONAL ORIGIN _____   ☐ RELIGION _____

DISABILITY ☐ Mental _____  ☑ Physical Injury on job   ☑ REPRISAL 11/08/04 EEO Charge 5/04 FECA (Date(s) and type of prior EEO activity)

**10. EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST** (If your complaint involves more than one basis of alleged discrimination, list and number each basis separately and provide specific factual information in support of each allegation of discrimination. If necessary, continue on page 2.)

① Discrimination based on age (Feb. 2004 - present)

② Discrimination based on perceived disability (Feb. 2004 - present)

③ Discrimination based on race. (Feb. 2004 - present)

④ Retaliation for filing EEO Charge & FECA claim and for FMLA protected activity. (SEE ATTACHMENT)

(May 04 - present)

| | |
|---|---|
| DA FORM 2590, FEB 2004 | REPLACES DA FORM 2590-R, AUG 89, WHICH IS OBSOLETE. |

PAGE 1 OF 3
APD V1.00

2

EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST *(Cont'd)* *(If necessary, additional sheets may be used.)*

*(SEE ATTACHMENT)*

**11a.** NAME OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED  Walter Reed Army Medical Center

**11b.** ADDRESS OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED  6900 Georgia Ave, N.W. Washington, D.C. 20307-5001

**12a.** HAVE YOU DISCUSSED THE ISSUE(s) IN BLOCK 10 WITH AN EEO COUNSELOR? *(If yes, complete 12b, 12c, and 12d below.)*  NO ☐  YES ☑

**12b.** NAME OF EEO COUNSELOR  Ms. Moore

**12c.** DATE OF INITIAL CONTACT WITH EEO OFFICIAL *(YYYYMMDD)*  2004/11/08

**12d.** DATE NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION RECEIVED *(YYYYMMDD)*  2005/01/14

**13.** ELECTION OF REPRESENTATION  ☑ ATTORNEY  ☐ NON-ATTORNEY  ☐ NO REPRESENTATION

NAME OF REPRESENTATIVE  Jason H. Ehrenberg, Bailey + Ehrenberg PLLC

ADDRESS  1155 Connecticut Ave, N.W., Suite 1100, Washington, DC

TELEPHONE NUMBER: 202 465 4729  FAX: 202 316 7071  E-MAIL: jhe@becounsel.com

**14.** WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? *(State specific corrective action desired for each allegation.)*

(1) That I be allowed to return to my position and that I be compensated in the amount of $130,000; or

(2) That I be compensated in the amount of $390,000.

**15a.** HAVE THE ISSUES IDENTIFIED IN BLOCK 10 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD *(MSPB)* OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE? ☑ NO  ☐ YES (If yes, complete 15b, 15c, and 15d below.)

**15b.** ☐ MSPB  ☐ UNION NEGOTIATED GRIEVANCE

**15c.** DATE FILED *(YYYYMMDD)*

**15d.** MSPB OR UNION DOCKET NUMBER *(If known)*

**16.** LIST NAME(s) OF WITNESS (ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

(1) Linda Heath - info re other employees who have suffered similar discrimination based on physical limitation.

(2) Patty Colvert - info re defendant's harassment

(3) Lola Battle - info re discrimination and harassment.

(4) Lt. Lewis - info re my job performance.

**17a.** SIGNATURE OF COMPLAINANT  Madeline Cimpladis

**17b.** DATE DA FORM 2590 SIGNED BY COMPLAINANT *(YYYYMMDD)*  2005/01/25

DA FORM 2590, FEB 2004

PAGE 2 OF 3
APD V1.00

3

**SECTION II - TO BE COMPLETED BY THE PROCESSING EEO OFFICER** *(EEOO)*

| | |
|---|---|
| 18a. NAME OF COMPLAINANT<br>Madeline L. Riggiladez | 18b. SOCIAL SECURITY NUMBER | 18c. DA DOCKET NUMBER<br>ARWRAMC04NOV07148 |

| | |
|---|---|
| 18d. TYPED/PRINTED NAME OF EEOO<br>THOMAS DICKENSON | 18e. ADDRESS OF EEO OFFICE *(Complete address to include office symbol)*<br>WALTER REED ARMY MEDICAL CENTER<br>6900 GEORGIA AVE<br>WASHINGTON DC 20307<br>MCWR-EEO |
| 18f. EEOO TELEPHONE NUMBER<br>202-782-7058 | |
| 18g. EEO OFFICE FAX NUMBER<br>202-782-6297 | |
| 18h. EEOO E-MAIL ADDRESS<br>thomas.dickenson@amedd.army.mil | 18i. SIGNATURE OF EEOO |

| | |
|---|---|
| 19a. DATE COMPLAINT RECEIVED *(YYYYMMDD)*<br>20050126 | 19b. METHOD OF DELIVERY |
| 19c. DATE COMPLAINT DEEMED FILED *(YYYYMMDD)*<br>20050126 | [X] IN PERSON    [ ] MAIL *(postmark date)* *(YYYYMMDD)* |
| 19d. DATE COMPLAINT ACCEPTED OR DISMISSED *(YYYYMMDD)* | [ ] FAX    [ ] OTHER |

20. IDENTIFY ISSUES IN BLOCK 10 BY PLACING AN A FOR ACCEPTED OR A D FOR DISMISSED IN APPLICABLE BOX*(es)*

| | | | | | |
|---|---|---|---|---|---|
| APPOINTMENT/HIRE | | EXAMINATION/TEST | | REINSTATEMENT | |
| ASSIGNMENT OF DUTIES | | EVALUATION/APPRAISAL | | REPRIMAND | |
| AWARDS | X | HARASSMENT *(non-sexual)* | | RETIREMENT/CONSTRUCTIVE DISCHARGE/RESIGNATION | |
| CONVERSION TO FULL TIME | | HARASSMENT *(sexual)* | | SUSPENSION | |
| DETAIL | | PAY/OVERTIME | X | TERMINATION | |
| DEMOTION | | PROMOTION/NON-SELECTION | | TIME AND ATTENDANCE | |
| DISCIPLINARY ACTION *(other)* | | REASSIGNMENT-REQUEST DENIED | | TRAINING | |
| DUTY HOURS | | REASSIGNMENT-DIRECTED | | TERMS/CONDITIONS OF EMPLOYMENT | |

OTHER
*(Specify)*

21. REMARKS

DA FORM 2590, FEB 2004

PAGE 3 OF 3
APD V1.00

## ATTACHMENT TO FORMAL COMPLAINT OF DISCRIMINATION
## FILED BY MADELINE RIGGILADEZ (SS # 152409944)

As set forth in more detail below, I believe that I have been subjected to discrimination and harassment in violation of the ADEA, the ADA, and Title VII on an ongoing basis since February 2004. Specifically, I believe that employees and agents of the Walter Reed Army Medical Center (the "Hospital") have discriminated against me based upon my age in violation of the ADEA, based upon my perceived disability in violation of the ADA, and based upon my race in violation of Title VII. I also believe that employees and agents of the Hospital have retaliated against me for enforcing my rights under the aforementioned statutes (specifically, for filing a charge with the Hospital's EEO office in November 2004) as well for enforcing the rights afforded to me by the FMLA and FECA.

I have worked as a Clinical Nurse, GS-0610-11, at the Hospital since I was hired by the Hospital in November 2002. From that time until February 2004, I performed my duties at the Hospital at or above applicable standards. Indeed, my October 2003 review indicated that my performance was nothing less than stellar and that I was a tremendous asset to the hospital.

In February 2004, I severely injured my knee, sustained a vitreous detachment of my left eye and an injury to my left lateral central incisor while performing my duties at the Hospital. These injuries caused me to miss fifteen days of work. I returned to work at the Hospital immediately upon receiving clearance from my physicians. Immediately upon my return, I was subjected to ongoing harassment and discriminatory treatment from my supervisors and other employees based upon my age and my perceived physical limitations/disabilities resulting from my work injury. This harassment and discriminatory treatment took many forms, including, among other things:

- random and unnecessary changes in my shifts (from nights to days and days to nights at two week intervals), despite the fact that I was specifically hired to work nights only;

- derogatory statements from other Hospital personnel with regard to my age (I am 56 years old, most of my co-workers on Ward 46 are far younger than me);

- unfounded accusations of wrongdoing and poor performance, including accusations of improperly handling my duties on days/evening when I was not even present at work (I was never officially informed and/or reprimanded for any these alleged actions/inactions and believe that proper procedures were not followed with respect to the reporting of these actions/inactions); and

- various other forms of verbal harassment and discriminatory treatment (including denying me the option of selecting a 72, as opposed to 80, hour work week with full benefits – an option that was afforded to all other GS nurses).

The aforementioned harassment and discrimination caused me to have to see a psychiatrist and psychologist, who diagnosed me with depression and a nervous disorder – the onset of which was caused by the harassment and discrimination to which I was subjected to at the Hospital. I was prescribed medication to help me cope with this new disorder.

On May 23, 2004, I was again injured while tending to one of my patients. While attempting to help a patient sit up, I sprained both my back and groin and re-injured my knee. These injuries forced me to miss four months of work. Thus, I was forced to file a claim for benefits with the Hospital's FECA office.

In September 2004, my doctors once again cleared me to return to work with a start date of October 1, 2004. Thereupon, I immediately informed Hospital staff of this clearance and noted that I planned to return to work on October 1, 2004. Shortly thereafter, in late September 2004, I received a Notice of Proposed Removal (the "Notice") from the Hospital, stating that the Hospital intended to remove me from my current position as Clinical Nurse, GS-0610-11, and from the Federal Service because on

6

May 23, 2004 at Ward 46 of the Hospital, I allegedly was "negligent in the performance of her duties in a manner that endangered patient safety."

The Notice was the first communication I received from the Hospital concerning any alleged dereliction of duty, which allegedly took place four months earlier (and, conveniently, on the same day that I suffered serious injuries that forced me to miss several months of work). The timing of the Notice, which was sent only days before my planned return from medical leave and a disabling injury, is suspicious – especially when viewed in conjunction with the harassment and discriminatory treatment I was subjected to after my February 2004 injury.

Subsequent actions by the Hospital further support the inference that the Hospital's purported reasons for the Notice are pretextual. By letter dated October 29, 2004, I responded to the Notice. I subsequently contacted the Hospital's EEO office in early November 2004 and filed an informal charge of discrimination against the Hospital. In response, the Hospital retaliated against me for attempting to enforce my federally protected EEO rights, by, among other things:

- Failing to inform me of the status of my employment with the Hospital during the *three months* that have passed since I responded to the Notice on October 29, 2004;

- Failing to place me on paid administrative leave for the period October 1, 2004 to the present, even though similarly situated younger, healthier employees receiving proposed notices of removal or facing disciplinary action are routinely placed on paid administrative leave;

- Failing to pay me *any* salary since October 1, 2004; and

- Initially refusing to pay, and then unreasonably delaying the payment of FECA benefits, even though I was clearly entitled to the benefits.

These actions, and the prior actions of the Hospital noted above, have not only caused me and my family to suffer tremendous emotional and physical distress (my husband

7

recently suffered a heart attack due, at least in part, to the tremendous stress his family has undergone because of the Hospital's actions), but have also caused us to suffer tremendous financial hardship (as noted above, I have been without pay -- without explanation from the Hospital --for the last four months; I have had to take out loans to pay my mortgage and medical bills and have been threatened with foreclosure on my home).

I am experienced nurse with no record of poor performance prior to my return from medical leave in February 2004. Upon my return from medical leave in February 2004, I was subjected to harassment and discriminatory treatment based upon my age and perceived physical disability, and in retaliation for asserting my FMLA and FECA rights. This pattern of discrimination and harassment has been, and is still, of a continuing nature. To date, I have not received any decision on the Notice – even though more than *three* months have passed since I responded to the allegations contained therein. Nor have I received *any* salary from the Hospital since this time. Due to this treatment, I believe that the purported reason for my proposed removal is pretextual and that other younger, healthier employees from different ethnic and racial groups who have not attempted to enforce similar rights would not have been treated in this manner. I also believe that the purported basis for the Notice is pretextual because I am aware of at least one much younger Caucasian employee of the Hospital -- who was alleged to have committed the same dereliction of duty I am alleged to have committed -- who was not provided a proposed notice of removal and who was not terminated from his employment with the Hospital.

Based on the above, I believe that I have been discriminated and retaliated against by the Hospital on a continuing basis since my return from my February 2004 injury. I believe that I have been treated differently from other employees based upon (1) my age in violation of ADEA, and (2) my perceived physical disabilities in violation of the ADA. I also believe that, based upon the allegations noted above, I have been discriminated against by based upon my race (I am 50% African-American and 50% Caucasian) in violation of Title VII of the Civil Rights Act of 1964. I also believe that the Hospital has retaliated against me in violation of the ADEA, the ADA and Title VII for filing a charge of discrimination with the Hospital's EEO office in November 2004. Finally, it is my belief that the Hospital has retaliated against me for attempting to enforce my rights under the FMLA and FECA.

..LEY & EHRENBERG PLLC

.5 CONNECTICUT AVENUE, N.W. • SUITE 1100 • WASHINGTON, D.C. 20036 • TELEPHONE (202) 465-4729 • FACSIMILE (202) 318-7071

2005 JAN 26 PM 12: 44

Jason H. Ehrenberg
(202) 465-4729
jhe@becounsel.com

January 25, 2005

## VIA HAND DELIVERY

Equal Employment Opportunity Officer
Thomas F. Dickenson
Walter Reed Army Medical Center
6900 Georgia Avenue
Building 1, Room B220
Washington, D.C. 20307

Re: Formal Complaint of Discrimination – Madeline L. Riggiladez

Dear Sir:

Please find enclosed herewith the formal charge of discrimination of Madeline L. Riggiladez against the Department of Defense/Walter Reed Army Medical Center (the "Hospital").

Please accept this letter as my formal notice of appearance (and the notice of appearance of the law firm of Bailey & Ehrenberg PLLC) on behalf of Ms. Riggiladez with respect her formal complaint of discrimination against the Hospital. Please direct any and all future communications and correspondence with respect to Ms. Riggiladez's charge to this office.

Please feel free to contact me with any questions.

Sincerely,

Jason H. Ehrenberg

10

BAILEY & EHRENBERG PLLC

1155 CONNECTICUT AVENUE. N.W.   •   SUITE 1100   •   WASHINGTON, D.C. 20036   •   TELEPHONE (202) 465-4729   •   FACSIMILE (202) 318-7071

Jason H. Ehrenberg
(202) 465-4729
jhe@becounsel.com

October 29, 2004

**VIA FACSIMILE (202-782-5386)**

Col. Rosemarie Edinger, Deciding Officer
Department of the Army
Walter Reed Army Medical Center
Walter Reed Health Care System
Washington, D.C.  20307-5001

Re:   **Notice of Proposed Removal – Madeline L. Riggiladez**

Dear Colonel Edinger:

This firm represents Madeline L. Riggiladez with respect to her employment with the Walter Reed Army Medical Center (the "Hospital"). Please accept this letter as Ms. Riggiladez's formal reply to the Notice of Removal (the "Notice") you forwarded to her attention on September 10, 2004.[1]

The Notice states that you intend to remove Ms. Riggiladez from her current position as Clinical Nurse, GS-0610-11, and from the Federal Service because on May 23, 2004 at Ward 46 of the Hospital, Ms. Riggiladez allegedly was "negligent in the performance of her duties in a manner that endangered patient safety."  The Notice omits several key facts and events that militate against your proposed removal.  These facts and events are set forth below.

Ms. Riggiladez has worked as a Clinical Nurse, GS-0610-11, at the Hospital since she was hired by the Hospital in November 2002.  From that time until February 2004, Ms. Riggiladez performed her duties at the Hospital at or above applicable standards.  In February 2004, Ms. Riggiladez severely injured her knee, sustained a vitreous detachment of her left eye and an injury to

---

[1] While Ms. Riggiladez would prefer to respond to the Notice in person, she has been unable to do so, and presently is unable to do so, because she has been suffering from an ovarian tumor and is/has been heavily medicated. Ms. Riggiladez is scheduled to undergo surgery to remove the tumor at Fairfax Hospital on November 1, 2004.

22

her left lateral central incisor while performing her duties at the Hospital. These injuries caused her to miss fifteen days of work. Ms. Riggiladez returned to work at the Hospital immediately upon receiving clearance from her physicians. Immediately upon her return, Ms. Riggiladez was subjected to ongoing harassment and discriminatory treatment from her supervisors and other employees. This harassment and discriminatory treatment took many forms, including, among other things:

- random and unnecessary changes in her shifts (from nights to days and days to nights at two week intervals), despite the fact that she was specifically hired to work nights only;

- derogatory statements from other Hospital personnel with regard to her age (Ms. Riggiladez is 54 years old, most of her co-workers on Ward 46 are far younger than her);

- unfounded accusations of wrongdoing and poor performance, including accusations of improperly handling her duties on days/evening when she was not even present at work (Ms. Riggiladez was never officially informed and/or reprimanded for any these alleged actions/inactions and believes that proper procedures were not followed with respect to the reporting of these actions/inactions); and

- various other forms of verbal harassment and discriminatory treatment.

The aforementioned harassment and discrimination caused Ms. Riggiladez to have to see a psychiatrist and psychologist, who diagnosed her with a nervous disorder -- the onset of which was caused by the harassment and discrimination to which she was subjected to at the Hospital. Ms. Riggiladez was prescribed mediation to help her cope with this new disorder.

On May 23, 2004, the date of Ms. Riggiladez's alleged dereliction of duty at the Hospital, Ms. Riggiladez was again injured while tending to one of her patients. While attempting to help a patient sit up, Ms. Riggiladez sprained both her back and groin and re-injured her knee. These injuries forced Ms. Riggiladez to miss four months of work.

23

BAILEY & EHRENBERG PLLC
Col. Rosemarie Edinger
October 29, 2004

In September 2004, Ms. Riggiladez's doctors cleared her to return to work with a start date of October 1, 2004. Thereupon, Ms. Riggiladez immediately informed Hospital staff of this clearance and noted that she planned to return to work on October 1, 2004. Shortly thereafter, in late September 2004, Ms. Riggiladez received the Notice wherein you informed her that you intended to terminate her employment with the Hospital. This was the first communication Ms. Riggiladez received from your office concerning her alleged dereliction of duty, which took place four months earlier. The timing of the Notice, which was sent only days before Ms. Riggiladez's planned return from medical leave and a disabling injury, is suspicious -- especially when viewed in conjunction with the harassment and discriminatory treatment she was subjected to after her February 2004 injury.

Needless to say, Ms. Riggiladez denies that she was negligent in the performance of her duties in a manner that endangered patient safety on May 23, 2004. Ms. Riggiladez is an experienced nurse with no record of poor performance prior to her return from medical leave in February 2004. Upon her return from medical leave in February 2004, she was subjected to harassment and discriminatory treatment. Due to this treatment, Ms. Riggiladez believes that the purported reason for her proposed removal is pretextual and that other younger, healthier employees from different ethnic and racial groups would not have been treated in this manner. As such, Ms. Riggiladez either has or will be filing an EEO charge with the EEO office at the Hospital.

Please feel free to contact me with any questions.

Sincerely,

Jason H. Ehrenberg

24

ARW RAMCO4 NOV07 148

50% BLACK
50% CAUCASIAN

## INQUIRY FORM

NAME: MADELINE RIGGILADEZ   SSN:

JOB TITLE: CLINICAL NURSE PAY PLAN SERIES/GRADE: GS-0610-11

ORGANIZATION: WALTER REED ARMY MEDICAL CENTER

DUTY PHONE: 202-782-1446   HOME/CELL: (OPT.): ~~illegible~~

DATE OF BIRTH: 48   RACE: ~~BLACK/CAUCASIAN~~

HOME ADDRESS:

WORK E-MAIL: N/A

SUPERVISOR: Major Lillian M. Peterson, Head Nurse, Ward 46

SUPERVISOR DUTY PHONE: 202-782-1446/202-782-8253

DATE OF MOST RECENT INCIDENT: October 22, 2004

BRIEF DESCRIPTION OF ALLEGATION (WHAT BROUGHT YOU HERE TODAY):

I BELIEVE THAT I HAVE BEEN DISCRIMINATED
AGAINST BASED ON MY AGE, PERCEIVED
DISABILITY/ILLNESS, AND RACE.

PLEASE SEE ATTACHED LETTER
FOR MORE DETAILS.

Jason W. Ehrenberg (on behalf of       11/08/04
_____             _____
Signature of Aggrieved                    Date
(Madeline Riggiladez)

Signing this also acknowledges you have read the first page.

Date of Birth 12/24/48
Race BLACK 50%   National Origin N/A
e·3 CAUCASIAN 50%

25

Nov 03 04 10:52a

Incident Report:

On April 30, 2004, I bumped into Lt. Lewis as I was exiting Major Peterson's office, after what I believed to be an unfair performance evaluation. After informing Lt. Lewis of my meeting with Major Peterson, Lt. Lewis made several comments that made me uncomfortable. Lt. Lewis stated, upon hearing the statements made to me by Major Peterson, that she, "was not surprised." Lt. Lewis informed me that she had previously been asked to write a memo stating that I was not proficient at handling trachea patients. Lt. Lewis advised me that she felt that a "witch hunt" and a "railroading" were taking place. I was informed during the course of this conversation that other nurses had written me up (on days when I was not even in the building). This conversation made me realize that several unfavorable outcomes (such as not being approved for a transfer and being placed on a more demanding workschedule) were very possibly directly related to the "witchhunt." This was not the first, or the last, instance where I felt that my superiors and/or my colleagues targeted me in such a way that my self-respect and my job performance were seriously affected.

This same week, I was informed by Lt. Mooney that I was "slow" and needed to speed things up. I felt that she was attacking me because of my age. On another occasion, I overheard Lt. Mooney tell one of my co-workers Lt. Kenny that he, like me, would have a difficult time mastering the computer system because of our age.

My work environment has become increasingly hostile over the course of the last few months. There have been multiple instances where I have been called old woman, and been embarrassed in front of the other personnel. I do not feel that I should have to continue to work under these conditions. I may be older, but with age comes experience. I should be valued because my age brings with it many positive attributes. Instead, I am criticized and ridiculed.

Reply    Reply All    Forward    Delete    Move To: (Choose Folder)

*Madeline Rigglades RN*
*June 8, 04*

26



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, U.S. ARMY GARRISON
WALTER REED ARMY MEDICAL CENTER
6900 GEORGIA AVE NW
WASHINGTON DC  20307-5001



MCWR-EEO (690-600)                    14 January 2005

MEMORANDUM FOR

SUBJECT: Notice of Right to File a Formal Complaint of Discrimination after Completion of
Traditional EEO Counseling DA Docket Number ARWRAMC04NOV07148

1. This serves as notice that on 14 January 2005, the final counseling interview was scheduled
in connection with the claim(s) you presented during the precomplaint intake interview and to
me as an Equal Employment Opportunity (EEO) counselor. Your initial contact with an EEO
official was on 8 November 2004, and my initial interview with you was on 13 December 2004.
You alleged that you were discriminated against on the basis of **your race, age and disability,
when on 10 September 2004, you received a notice of proposed removal.**

2. If you believe that you have been discriminated against on the basis of race, color, religion,
sex, national origin, age, mental/physical disability and/or in reprisal for participation in protected
EEO activity or opposition to prohibited discrimination, you have the right to file a formal
complaint of discrimination within 15 calendar days of receipt of this notice.

3. This complaint must be in writing, preferably on a DA Form 2590, which is provided for your
convenience. (For ease of completion, you may also access this form on the Army's publication
website at: http://www.apd.army.mil.) Your complaint must be filed in person by you or your
attorney, if you retain one, or by mail with any of the following officials listed below. If you file
your complaint with one of the officials listed below, other than the EEO officer, it will be sent to
the EEO officer for processing. Therefore, it is recommended that your complaint be filed with
the EEO officer to ensure the most expeditious processing.

     a. Equal Employment Opportunity Officer
     Thomas F. Dickenson
     6900 Georgia Avenue
     Building 1, Room B220
     Washington, DC 20307

     b. Commander
     North Atlantic Region Medical Command
     6900 Georgia Avenue
     Building 1, Room B220
     Washington, DC 20307

     c. Department of the Army
     Director of Equal Employment Opportunity/Civil Rights
     ATTN: Deputy for EEOCCR (SAMR-EO-CCR)
     1901 South Bell Street, Suite 109B
     Arlington, VA 22202-4508



Printed on   Recycled Paper

d. Secretary of the Army
ATTN: SAMR-EOCCR
1901 South Bell Street, Suite 109B
Arlington, VA 22202-4508

4. The formal complaint must specify the claim(s) and the basis (es) of the complaint discussed during the counseling session(s). It is important that you state the incident(s) that caused you to initiate your complaint as concisely as possible, citing the nature of the action, the date of the action, and the person(s) involved. You may only raise claim(s) and incident(s) discussed, or like or related to those discussed, during counseling. The complaint should also state whether you have filed a grievance under a Negotiated Grievance Procedure or an appeal to the Merit System Protection Board, on the same subject matter, including dates. This information is necessary to determine whether your complaint is appropriate for processing under Title 29, Code of Federal Regulations, Part 1614.

5. If you retain an attorney or any other person as a representative, you must immediately notify the EEO officer, in writing, of the name, address, and telephone number of your attorney or representative. See the address shown in paragraph 3a for address of EEO office. You are advised that—

     a. Unless you state otherwise in writing, after receipt of written notice of the name, address, and telephone numbers of your representative, service of all documents will be with the representative, with a copy furnished to you.

     b. If your representative is an attorney, service of all official correspondence will be made on the attorney with a copy furnished to you, however, time frames for the receipt of correspondence will be computed from the date of receipt by the attorney.

6. You and/or your representative will receive a written acknowledgement of receipt of your formal discrimination complaint from the EEO officer.


                    EEO Counselor


IF NOTICE PRESENTED IN PERSON, INCLUDE THE FOLLOWING:

_Madeline Rigglederry_ _____        _Jan. 14, 05_ _____
Signature of Aggrieved                  Date Received by Aggrieved

ICS - NATIONAL CAPITAL AREA                    02 Mar 2004@1218    Page 1
rsonal data - Privacy act of 1974  (PL 93-579)
==============================================================================

ORDER
Last   RX    040302-17873                    RIGGILADEZ,MADELINE L
        PROPOXYPHENE NAPS/ACETAMINOPHEN 100-650-~T1 TAB PO Q4-6H PFP RFO #10
      DS1  on 02 Mar 2004@1217


      APHARM WRAMC  MAIN
      SAPLAN,UN HUN A CIV,/SIGNED/ACTIVE




                              UN HUN A. SAPLAN, MD
                              OCCUPATIONAL HEALTH CLINIC

104

# DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 22-100; the proponent agency is TRADOC

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army and E.O. 9397 (SSN)
**PRINCIPAL** To assist leaders in conducting and recording counseling data pertaining to subordinates.
**ROUTINE USES:** For subordinate leader development IAW FM 22-100.  Leaders should use this form as necessary.
**DISCLOSURE:** Disclosure is voluntary.

## PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) RIGGILADEZ, MADELINE L | Rank/Grade GS0610-11 | Social Security No. | Date of Counseling 26 OCTOBER 2003 |
|---|---|---|---|
| Organization Walter Reed Army Medical Center | | Name and Title of Counselor Lillian Peterson, MAJ/AN Head Nurse Ward 46 | |

## PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** *(Leader states the reason for the counseling, e.g., performance/professional growth or event-oriented counseling, and includes the leader's facts and observations prior to the counseling.)*
On 26 October 2003, during the 1900-0700 shift, you violated professional standards of behavior and conduct.  The situation that arose between you and 2LT Vanderlinden was handled in a manner that demonstrated immaturity and bad judgement.

## PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

1.  Professionalism:  Professionalism is to be maintained at all times.  Patient care and safety are priority.  When you and 2LT Vanderlinden yelled at each other, in the break-room, this was very unprofessional.  Other staff members, as well as patients heard the argument.

2.  Army Values:  Respect of self and others in NOT negotiable.  It will be shown to everyone encountered in this medical facility and even more so on this unit.  As a civilian, you took an oath to uphold Army Values as part of your DUTY here.  2LT Vanderlinden stated that you were inside her personal space.  It was very disrespectful for you to state that you didn't care and continue to approach her.  Had 2LT Vanderlinden been a more aggressive person, this situation could have escalated into a physical cionfrontation.

3.  Do the right thing because it's the right thing to do.  You're not expected to like each other, but you will support all staff members for the good of the WRAMC mission and vision and above all, the patients on ward 46.  You are expected to pull together to ensure patient safety.  My concern is how you would have reacted if one of 2LT Vanderlinden's patients had "coded"?  This should never have to be an issue.

4.  Consideration of Others.  Recognize that everyone is different, depending on their cultures and various other beliefs.  Don't take things so seriously that you become paranoid.  Becoming hostile when approached about an action you may or may not have taken will only add fuel to the fire.  Everyone is NOT out to get you.  When the new LTs make plans for things to do after they get off shift, and they don't ask you to join them, don't take it personal.  For one thing they are half your age and they are single. If you really want to participate, ask them if you can join in.

5.  Maturity.  As the senior and more experienced nurse, I hold you more accountable than 2LT Vanderlinden.  You are to set the example and be the mature individuale that you are fully capable of being.  I expect you to stay calm and composed even when statements are being made that upset you.  You cannot remain a rational individul if you resort to immaturity to solve problems. Pointing fingures and pounding your hand is not an adult action.

## OTHER INSTRUCTIONS
This form will be destroyed upon:  reassignment *(other than rehabilitative transfers)*, separation at ETS, or upon retirement.  For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**DA FORM 4856, JUN 1999** EDITION OF JUN 85 IS OBSOLETE USAPA V1.00

**Plan of Action:** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below).)*

A plan is being made to utilize the PCLS, MAJ MCLaughlin as the mediator between you and 2LT Vanderlinden. The goal is to introduce you to skills that will help you to work in all types of environments and with all types of people. Most immediate will be assisting you and 2LT Vanderlinden to develop a way to work together. I will follow whatever suggestions she has. If the hostility and disrespect continue to disrupt the unit environment, I plan to request that you and 2LT Vanderlinden both be transfered from Ward 46.

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☐ I agree   ☐ disagree with the information above.

Individual counseled remarks:

Signature of Individual Counseled: _____   Date: _____

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

1. Contact MAJ McLaughlin and request her to mediate with Ms. Riggiladez and 2LT Vanderlinden

Signature of Counselor: *Vivian M Pitan MAJ AN*   Date: *26 Oct 03*

---

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Ms. Riggiladez met ē mato Mc Laughlin. Awaiting recommendation Behavior has improved ATB — no continuation of emotional outburst

Counselor: *Pitan MAJ AN*   Individual Counseled: _____   Date of Assessment: *15 Dec 03*

**Note:** Both the counselor and the individual counseled should retain a record of the counseling.

VERSE, DA FORM 4856, JUN 1999.

*124*

USAPA V1.00

# DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 22-100; the proponent agency is TRADOC

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army and E.O. 9397 (SSN) |
| PRINCIPAL | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| ROUTINE USES: | For subordinate leader development IAW FM 22-100. Leaders should use this form as necessary. |
| DISCLOSURE: | Disclosure is voluntary. |

## PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) RIGGILADEZ, MADELINE L. | Rank/Grade GS0610-11 | Social Security No. | Date of Counseling 20 JAN 2004 |
|---|---|---|---|
| Organization WRAMC, WASHINGTON DC. 20307 | | Name and Title of Counselor LILLIAN PETERSON, MAJ/AN, HEAD NURSE WD46 | |

## PART II - BACKGROUND INFORMATION

Purpose of Counseling: (Leader states the reason for the counseling, e.g., performance/professional growth or event-oriented counseling, and includes the leader's facts and observations prior to the counseling.)
To discuss your current level of performance on ward 46 . This is to include clinical skills and critical thinking skills. Based upon the level of care required by the patient population, of this unit, certain competencies are required. At the present time, you are not performing at an acceptable level. MAJ Berger, the senior clinical nurse and the assistant head nurse, was asked to observe your performance for two months (22 Oct- 23 Dec 2004). Based upon my concerns with your performance and his evaluation, I have decided to implement a performance improvement plan. This will be the final opportunity to raise your level of performance to an acceptable level.

## PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

Key Points of Discussion:
Causes that contribute to deficiency:
* limited knowledge and experience in providing care to the patient population of ward 46
* inability to grasp basic nursing essentials for ward 46
* limited problem solving abilities

Identifiable areas needing improvement:
* telemetry monitoring, interpretation, intervention
* interpersonal communications
* self-confidence

Possible need for family/personal counseling. Personal issues that you have shared with me appear to impact your ability to react in an appropriate mature and professional manner.

## OTHER INSTRUCTIONS
This form will be destroyed upon: reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

| DA FORM 4856, JUN 1999 | EDITION OF JUN 85 IS OBSOLETE | USAPA V1.00 |
|---|---|---|

126

**Plan of Action:** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below).)*

The plan is to raise your nursing skills, cognitive abilities and leadership skills to a level that will enhance the care provided to the patients on ward 46.

1. Enroll in the next ACLS class. This is a competency required by all nurses working on ward 46. You have not taking this course in the past because you stated you did not feel you were prepared. You believe that you are now ready to successfully complete this course
2. Review basic A&P of the pulmonary system.
3. Identify areas of weakness and strengths and present them to me at the next counseling session (apx 2 weeks)
4. Present performance improvement plan after completion of the preceding tasks.

Will evaluate progress before making recommendation to section supervisor.

---

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☐ I agree ☐ disagree with the information above.

Individual counseled remarks:

Signature of Individual Counseled: _____ Date: _____

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

22, 23 Jan — ACLS Class. Left class without completion. States unable to pass written test ⊙/r poor test taking ability. Did not tell course director (Ms. Hartman) about test taking problem.

Signature of Counselor: _____ Date: _____

---

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

You need to complete ACLS and take responsibility for your actions. (Didn't complete course).

Counselor: _____ Individual Counseled: _____ Date of Assessment: _____

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

REVERSE, DA FORM 4856, JUN 1999 USAPA V1.00

127



**Exhibit**
**F-** 8

128



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, U.S. ARMY GARRISON
WALTER REED ARMY MEDICAL CENTER
6900 GEORGIA AVE NW
WASHINGTON DC 20307-5001



14 February 2004

Uy Nguyen, M.D.
Nguyen Medical Practice
5565 Columbia Pike, Suite 115
Arlington, VA 22204

Dr. Nguyen

   The purpose of this letter is to request additional information regarding the disability claim of Ms. Madeline L. Riggiladez. This is requested to insure that she is in fact a disabled employee within the guidelines of the Rehabilitation Act of 1973 and the Americans with Disability Act, and if so, that our office is able to do all that we possibly can to insure that any accommodations she may need because of her disability are provided in a timely basis.

   Since she has identified herself as having a physical and/or mental limitation, it is her responsibility to provide the agency with the information necessary to act on issues pertaining to accommodations. To ensure she meets the criteria to be covered under the Disability Act/Rehabilitation Act, the Disability Program Manager will need you to provide this office with some additional information regarding her limitations or accommodation request. The required medical documentation must include clarification as to the nature of her medical problem, and, specific information as to what accommodations she may need to perform her job. Please provide the following information from your physician:

   a. The history of the medical condition, including references to findings from previous examination, treatment, and responses to treatment;

   b.   Clinical findings from your most recent medical evaluation including any of the following that have been obtained:  findings of physical examination; results of laboratory tests; X-rays, EKG's and other special evaluations or diagnostic procedures.

   c.  A diagnosis including the current clinical status.

   d.  Prognosis including plans for future treatment and an estimate of the expected date of full or partial recovery.

   e.  An explanation of the impact of the medical condition on overall activities both on and off the job, including the basis for any conclusion that restrictions or accommodations are or are not warranted, and where they are warranted, an explanation of their therapeutic or risk avoiding value.

   f.   An explanation of the medical basis for any conclusion that indicates the likelihood that the individual is, or is not, expected to suffer sudden or subtle incapacitation by carrying out, with or without accommodation, the tasks or duties of a specific position.

   g.  Narrative explanation of the medical basis for any conclusion that the medical condition



Printed on Recycled Paper

129

has or has not become static or well stabilized and the likelihood that the individual may experience sudden or subtle incapacitation as a result of the medical condition.

To assist in relating her condition to the specific duties of her position, a copy of Ms. Riggiladez's current job description is enclosed.

Please provide this information not later than **18 March 2005**.

In the interest of time, please FAX the information to the attention of David A. Dissinger at 202-782-6297. Point of contact for any questions is Mr. Dissinger at 202-782-0994.

Encl
Position Description

THOMAS F. DICKENSON
Equal Employment Opportunity Officer

130

# DEVELOPMENTAL COUNSELING FORM

For use of this form, see FM 22-100; the proponent agency is TRADOC

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army and E.O. 9397 (SSN)

**PRINCIPAL:** To assist leaders in conducting and recording counseling data pertaining to subordinates.

**ROUTINE USES:** For subordinate leader development IAW FM 22-100. Leaders should use this form as necessary.

**DISCLOSURE:** Disclosure is voluntary.

### PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Social Security No. | Date of Counseling |
|---|---|---|---|
| RIGGILADEZ, MADELINE L. | GS0610-11 | | 2 APRIL 2004 |

| Organization | Name and Title of Counselor |
|---|---|
| WRAMC, WASHINGTON, DC. 20307 | LILLIAN PETERSON, MAJ/AN, HEAD NURSE WD46 |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** (Leader states the reason for the counseling, e.g., performance/professional growth or event-oriented counseling, and includes the leader's facts and observations prior to the counseling.)

Performance and professional development. The purpose of this counseling is to discuss my expectations of your professional performance. The concern is your ability to provide the level of care required by the patient population that is typically admitted to ward 46. It also concerns your ability to participate as a team player and to interact, on a professional level, with all personnel assigned to WRAMC and ward 46 particularly. Initially, it was decided that you would work on ward 41 for 30 days for assessment. This was a joint decision with Ms. Riggiladez, Ms. Van Patten (HN ward 41), MAJ Peterson (HN Ward 46), and COL Edinger (C, CCNS). Due to medical reasons, you did not report for assignment to ward 41. It was therefore determined that you would be assessed on ward 46, with Ms. Rodondi serving as your preceptor.

This assessment will occur on the day shift for the next 45 days. At the end of that period, a determination will be made of your ability to work independently on ward 46.

### PART III - SUMMARY OF COUNSELING

Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

I.  AREAS OF ASSESSMENT

   A. Basic Nursing Knowledge. Your ability to assess your patients, document via. CIS, timeliness of providing care, etc.

   B. Critical Thinking Skills. Determines appropriateness of reporting critical information, follow-through, correct courses of action, etc.

   C. Time Management. Demonstrates appropriate use of time.

   D. Interpersonal/Communication Skills. Your ability to interact professionally with other staff members

II.  EXPECTATIONS

   A. To function safely, competently, and independently as a staff member for ward 46.

   B. To take personal responsibility for self improvement and development.

   C. To keep chain of command aware of any changes that may occur that will impact your performance.

   D. To remain professional at all times.

   E. To demonstrate the Army Values in your performance.

### OTHER INSTRUCTIONS

This form will be destroyed upon: reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**DA FORM 4856, JUN 1999**          EDITION OF JUN 85 IS OBSOLETE          USAPA V1.00

**Plan of Action:** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below).)*

I. Professional Development
   1. Identify your weaknesses and strengths. Provide this information to the Head Nurse for development and assessment. Be honest with yourself during this exercise.
   2. Develop a self-improvement journal. Document the areas that you do well in and the areas that you need to improve. This will involve a lot of in-sight on your part. It will also help to quantify an increase in self-confidence.
   3. Provide a time line , to the head nurse, at the beginning of each shift. This will show what your plan is for each patient during your assigned shift.

II. Personal Development
   1. Demonstrate maturity when interacting with difficult personnel. I will be assessing you ability to act under stressful conditions.
   2. I will assess your ability to interact with physicians, other staff nurses, ancillary personnel, patients and their family members, etc.

- Review job description
- Review WD 46 requirements

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☐ I agree   ☐ disagree with the information above.

Individual counseled remarks:

Signature of Individual Counseled: _____   Date: _____

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)* Review plan during each shift. Assess plan + make adjustments as indicated. Provide feedback + encourage input from employee.

Signature of Counselor: _Kirwin M Peters ANG/RN_   Date: _26 April 04_

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)* The POA did not yield the expected results. Remediation not effective. In spite of providing guidance and a supportive environment, employee failed to meet acceptable standards. Also note MOR dated 30 April, 2004

Counselor _Peters ANG/RN_   Individual Counseled: _____   Date of Assessment: _17 May 04_

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

REVERSE, DA FORM 4856, JUN 1999                                           USAPA V1.00

134



MCHL-CCNS                                                                                  10 May 2004

MEMORANDUM FOR RECORD

SUBJECT: Performance Measures for GS 11/12

1. **Technical Competence, Nursing Process:** Provides nursing care using the nursing process (assess, plan, implement and evaluate.) Application of nursing process is evident by accurate, thorough, complete and timely entries during your shift utilizing the proper documentation tools. Demonstrates knowledge, nursing skills, communication skills and abilities to provide care to the age group or groups of assigned patients. Provides care according to institutional and departmental policies and procedures. In a random review of ten (10) records per rating period, the charts will have an accurate, thorough, complete and timely documentation according to WRAMC, DON and unit guidelines. The skills and knowledge needed to provide such care have been gained through education, training and/or experience.

**EXCELLENCE:** Performs outstanding age specific, quality nursing care utilizing the nursing process. In a random review of charting, 100% of the charts audited are in compliance with all standards. No negative written counseling statements, patient complaints, or unusual occurrences during this rating period related to this standard.

**SUCCESS:** Performs age specific, quality nursing care utilizing the nursing process. In a random review, 90% of the charts audited are in compliance with all standards. One (1) negative written counseling statement, one (1) unusual occurrence, and no patient complaints during rating period related to this standard.

**NEEDS IMPROVEMENT:** Inconsistently performs age specific, quality nursing care utilizing the nursing process. In a random review, 80% of the charts audited are in compliance with all standards. Two (2) negative counseling statements, two (2) unusual occurrences, or one (1) patient complaint during this rating period related to this standard.

**FAILS:** Performance, fails to provide quality nursing care utilizing the nursing process and fails to consider age specific indicators while planning, and performing nursing care. Charting fails to meet 80% accuracy. More than two (2) negative written counseling statements, more than two (2) unusual occurrences, or more than one (>1) patient complaint during this rating related to this standard.

2. **Technical Competence, Standards, Policies and Procedures:** Demonstrates knowledge and follows policies/procedures/standards IAW WRAMC, DON and unit policies. Understands how to access information through utilizing NPOLS, WRAMC Regulations, the internet and unit policy book. Maintains patent safety as evidenced by practicing infection control policies, recognizing hazards and taking action, initiates proper code blue procedures, takes appropriate action during fire drills. Is able to state basic procedures for the following events: Redbird, Fire (Code 100), HAZCOM, EPP (MASCAL, Code 400), Infant/child abduction (Code 0), and Bomb Threats,

**EXCELLENCE:** Actively writes, revises, reviews or updates two (2) unit SOPs and presents changes to staff or delivers two (2) in-services on two (2) unit SOPs or organizational policies during this rating period to reflect current operations. Always demonstrates outstanding knowledge of standards, policies and procedures. Assists in unit training and attends 100% of all required training. Requires no prompting to attend required training, schedules self for training. No negative counseling statements during this rating period related to this standard.

1

*135*

**SUCCESS:** Writes, revises, or updates one (1) unit policy and presents changes to the staff or delivers one (1) in-service on one (1) unit SOP or organizational policy this rating period to reflect current operations. Demonstrates knowledge of standards, policies and procedures. Attends 100% of required training. One (1) negative counseling during this rating period related to this standard.

**NEEDS IMPROVEMENT:** Does not write, review, revise or update any unit SOP during this rating period. Inconsistently demonstrates knowledge of standards, policies and procedures. Needs frequent reminders to attend required training or needs to be rescheduled due to no show. Two (2) negative counseling per rating period related to this standard.

**FAILS:** Does not write, review, revise or update any unit SOP during this rating period. Consistently fails to demonstrate knowledge of standards, policies or procedures. Fails to attend all required training. Two (2) negative counseling per rating period related to this standard.

**3. Technical Competence, Medication Administration:** Demonstrates knowledge of common medications to include dosages. Administers medications in an accurate and timely manner using the "5 rights" of medication administration. Appropriately documents all medications. Recognizes and reports immediately any adverse effects to physician. Initiates and reports unusual occurrences to Head Nurse by using an incident report (1811). Complies with every shift change narcotic count. Resolves any discrepancies immediately.

**EXCELLENCE:** In a random review of records, 100% of audited charts are properly documented. All discrepancies involving staff member are resolved. No negative counseling statements relating to this standard.

**SUCCESS:** In a random review of records, 90% of audited charts are properly document At least one (1) discrepancy involving staff member is not resolved. One (1) negative counseling statement relating to this standard.

**NEEDS IMPROVEMENT:** In a random review of records, 80% of audited charts are properly documented. More than one (>1) discrepancy involving staff member is not resolved. One (1) negative counseling statement related to this standard.

**FAILS:** In a random review of records, less than 80% of audited charts are properly documented. More than one (>1) discrepancy is not resolved. More than two (>2) negative counseling statements relating to this standard.

**4. Technical Competence, Leadership Skills:** Supervises and evaluates professional and/or paraprofessional staff in the performance of patient care/assigned duties. Demonstrates competency in establishing priorities of care, making assignments as appropriate, always considering the abilities and educational level of staff, organizes care within assigned team. Coordinates staff activities, such as meal times and breaks with patient care, tasks. Evaluates and follows-up on patient care and other assigned tasks. Demonstrates a team player attitude by directing staff in a manner that promotes teamwork, willingly participating in patient care and administrative tasks as needed in order that your team operates smoothly. Turns in all reports, assignments and "due-outs" in a timely fashion, meeting all suspense's.

2

*136*



**EXCELLENCE:** Demonstrates outstanding leadership abilities. Manages assigned duties smoothly, direct patient care activities with minimal disruption or complaints. Provides staff with feedback. Takes an active promoting teamwork, daily working side by side with staff to accomplish mission. Turns in all reports, assignments and "due-outs" in a timely fashion, meeting all suspense dates. Needs no prompting for said work to be completed and at times turns in work early. Receives positive feedback from peers and supervis regarding your strong leadership skills. No negative counseling statements during this rating period related this standard.

**SUCCESS:** Demonstrates strong leadership skills. Manages assigned duties smoothly, directing patient ca activities with few disruptions or complaints. Frequently takes an active role, promoting teamwork and works side by side assigned team members to accomplish mission. Turns in all reports, assignments and "due-out in a timely manner, meets suspense's 90% of the time. Needs prompting to do so. One (1) negative counseling statement related to this standard during the rating period.

**NEEDS IMPROVEMENT:** Demonstrates some leadership skills. Manages assigned team and directs patien care activities but needs guidance. Receives complaints and the team does not run smoothly. Seldom promotes teamwork. Works side by side assigned staff infrequently. Does not turn in reports, assignments ar "due-outs" in a timely fashion. Meets suspense's 80%. Asked frequently to turn in work. Two (2) negative counseling statements during this rating period.

**FAILS:** Demonstrates poor leadership abilities. Needs frequent guidance to manage assigned. Directs patient care activities with difficulty. Receives numerous complaints that the team does not run smoothly. Does not take an active role, seldom promotes teamwork. Works side by side staff infrequently. Does not turn in reports assignments and "due-outs" in a timely manner. Fails to meet suspense's 80% of the time. Asked frequently to turn in work with minimal response. More than two (>2) negative counseling statements during the rating period related to this standard.

5. **Technical Competence, Emergency Response:** Demonstrates knowledge of emergency procedures and functions effectively during any type of emergency such as Redbird, Fire (code 100), EPP (MASCAL code 400), Infant/child abduction (code 0), and Bomb Threats. Initiates the appropriate action and treatment and notifies appropriate personnel in a timely manner. Accurately and timely documents the event and submits the appropriate forms.

**EXCELLENCE:** Swiftly takes charge during emergency situations. Displays outstanding level of calmness and professionalism during emergency. Maintains control through out emergency situations. Directs personnel appropriately and ensures that unit coverage is maintained during the emergency. Readily assists in the training of staff members to prepare for such emergencies. Receives positive feedback for performance during emergencies. No negative counseling statements during this rating period related to this standard.

**SUCCESS:** Consistently takes charge during emergency situations. Displays appropriate level of calmness and professionalism during emergency. Involved throughout the emergency situation and assists in the direction of personnel and ensures that the unit is covered appropriately during the event. One (1) negative counseling statement during this rating period related to the standard.

**NEEDS IMPROVEMENT:** Inconsistent in response to emergency situations. Need encouragement and some direction during emergency situations. Inconsistent in level of professionalism and calmness. Needs guidance to direct personnel appropriately. Attends training to prepare for emergencies. Two (2) negative counseling statements during this rating period related to this standard.

3

*137*