IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MADELINE RIGGILADEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1337 (RJL) |
| ) | |
| HON. FRANCIS J. HARVEY, ) | |
| Secretary of the Army, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO DISMISS, OR
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In response to Defendant's renewed Motion to Dismiss, or in the alternative, Motion for Summary Judgment, Plaintiff files a woefully insufficient opposition that fails to demonstrate that Defendant's Motion should be denied. The allegations of Plaintiff's amended complaint, taken in the light most favorable to her pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6), fail as a matter of law to state a claim of discrimination and retaliation. Additionally, Plaintiff's request for discovery pursuant to Rule 56(f) should be denied, because she failed to provide sufficient reasons why discovery is necessary and failed to explain why she is unable to provide affidavits or other admissible evidence to refute Defendant's defenses.

## II. ARGUMENT

A. **Plaintiff's allegations of discrimination and retaliation fail as a matter of law and, therefore, dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.**

Plaintiff argues that dismissal of her amended complaint is inappropriate, because Defendant seeks dismissal under the wrong standard. The crux of Plaintiff's argument is her belief that all she is required to do to state of claim of discrimination or retaliation is to make bare allegations of the same in her complaint. While Plaintiff's complaint is to be construed liberally, the court need not accept inferences drawn by the Plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept Plaintiff's legal conclusions. *See National Treasury Employees Union v. United States,* 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Kowal v. MCI Communication Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In the instant case, Plaintiff has made only conclusory allegations, unsupported by facts alleged in the complaint, that she is a person with a disability. Specifically, Plaintiff alleges that she suffered injuries in February 2004 that caused her to miss *fifteen days* of work. (Amended Compl. ¶ 6). Plaintiff alleges that she developed a nervous disorder, but fails to allege that anyone at WRAMC knew of this alleged disorder or that it effected her work. (Amended Comp. ¶ 8). Lastly, Plaintiff alleges that she suffered a second injury in May 2004 that allegedly caused her to miss *four months* of work. (Amended Compl. ¶ 9). Plaintiff finishes with the conclusory assertion the Defendant perceived Plaintiff to be a qualified individual with a disability under the Rehabilitation Act ("RHA"). (Amended Compl. ¶ 27). As stated in Defendant's opening brief, these allegations are insufficient as a matter of law to establish a *prima facie* case of discrimination under the RHA.

Under the RHA a Plaintiff must establish that she was "regarded as" disabled, i.e., that (1) she was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of her major life activities. *See Mack v. Strauss*,134

F. Supp. 2d 103, 110 (D.C. Cir. 2001). Plaintiff fails to allege in her amended complaint the "major life activity" to which is she impaired and how she is "substantially limited" in said activity. *See Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 195 (2002). As the Court in *Toyota* emphasized, "merely having an impairment does not make [an individual] disabled." *Id*. Thus, Plaintiff's Amended Complaint fails to state a claim because she has not set forth allegations that she was impaired in a major life activity and that she was substantially limited by this impairment in performing that activity. All that the Court can garner from the allegations of Plaintiff's amended complaint, taken in the light most favorable to Plaintiff, is that she suffered two temporary injuries at work that cause her to miss fifteen days and four months, respectively, and that she suffered from a nervous disorder that was not known by Defendant nor effected her work performance. Indeed, the fact that Plaintiff's allegations themselves admit that her physical injuries were temporary is sufficient to warrant dismissal.

     Similarly, Plaintiff's amended complaint fails to set forth a *prima facie* case of retaliation as a matter of law. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999). To establish a causal connection, a plaintiff must show that the responsible officials had knowledge of the protected activity and that the adverse action occurred "shortly after" the protected activity. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006).

     In the case at bar, Plaintiff received Peterson's Notice of Proposed Removal in September

3

2004. (Amended Compl. ¶¶ 10-11).[1] Plaintiff did not initiate her EEO complaint, in writing through her attorney, until November 8, 2004. (Amended Compl. ¶ 12). Thus, due to the undisputed sequence of events *taken directly from the allegations of Plaintiff's complaint*, Plaintiff is unable to allege a causal connection. She made her first contact with an EEO counselor in November 2004. The initiation of the removal action predated this contact by two months. Plaintiff, therefore, cannot establish a *prima facie* case of retaliation as a matter of law. Major Peterson's initiation of the removal action *predated* her EEO contact by two months.

> **B.     Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(f) should be denied**.

Plaintiff argues that she must be provided the opportunity to conduct discovery in this case in order to oppose Defendant's Motion.[2] Plaintiff fails to establish the need for discovery, however, because the specific documents she states that she needs to discover will not assist her in opposing Defendant's Motion. First, none of the categories of documents Plaintiff seeks to discover could possibly refute the indisputable sequence of events described above. Specifically, Plaintiff cannot establish retaliation as a matter of law, because the alleged retaliatory removal was initiated prior to Plaintiff's protected activity.

Second, each of Plaintiff's requests are insufficient to establish a genuine issue of material fact for reasons specific to each. The gist of Plaintiff's requests are listed below, to

---

[1] The exact date is absent from Plaintiff's amended complaint, however, it is clear from the allegations set forth in paragraphs ten and eleven that Plaintiff received her notice of proposed removal after she alleges she informed the hospital that she would be returning to work in September 2004, but before she planned to return on October 1, 2004.

[2] Plaintiff's opposition fails to set forth material facts to which she contends a genuine dispute exists, in accordance with LCvR 7(h). This Court should deem Defendant's material facts as admitted.

which Defendant addresses each as follows:

    1)    Documents relating to or concerning any communications between Defendant and any past or present employee, officer or agent of Defendant regarding Plaintiff's health, disability status and/or age.

First, it should be notes that the Defendant in this case is the United States Army. Thus, Plaintiff is requesting documents relating to any communication from anyone in the U.S. Army pertaining to Plaintiff's health, disability status and/or age. Notwithstanding the overly broad nature of Plaintiff's request, Plaintiff fails to establish how any such documents will establish the existence of a genuine issue of material fact. Further this request completely ignores the fact that the Department of Defense complaints investigator compiled 344 pages of administrative materials in the course of the administrative fact-finding investigation. Plaintiff is in possession of these material, yet fails to explain why the materials are an insufficient. Rather, she makes only a sweeping, general request for documents.

    2)    Documents relating to EEO complaints made against Plaintiff's supervisors and/or against Defendant.

First, Plaintiff continues to fail to appreciate that the U.S. Army is the Defendant in this case. Thus, it is hard to imagine that information relating to EEO complaints against every member of the U.S. Army, for an unstated and indeterminable time frame, is reasonably calculated to lead to admissible evidence or, more importantly here, would establish a genuine issue of material fact. Second, regarding EEO complaints against Plaintiff's supervisors, Plaintiff's supervisors testified at the EEO administrative hearing and were subject to questioning by Plaintiff's attorney. Plaintiff had the opportunity to inquire as to whether EEO complaints were filed against them, but chose not to do so.

      3)      Documents provided by Plaintiff and/or her medical providers to Defendant regarding Plaintiff's health and/or disability status.

First, it is inconceivable that Plaintiff would assert that Defendant has in its possession documents provided by *Plaintiff* that Plaintiff either does not have herself, or at least can list with specificity so that this Court could decide if the documents would contain information establishing a genuine issue of material fact. Plaintiff offers no explanation of why she is not in possession of these documents. Nor, if she provided her sole copies of these documents to Defendant, does she explain what these documents may be. Second, Plaintiff provides no explanation regarding why she believes that her medical providers (apparently without her consent or knowledge) have provided information to Defendant. Nor has she explained why she is unable to obtain these very same putative documents herself directly from her medical providers.

      4)      Documents relating to Defendant's policies and practices regarding notices of termination.

The gist of Plaintiff's argument is that she should have been placed on paid administrative leave pending Defendant's decision regarding whether or not to terminate her employment. First, Plaintiff ignores the fact that her counsel questioned the relevant representative of Defendant's personnel office regarding the policies and practices pertaining to notices of termination. Plaintiff fails to explain why this testimony, taken under oath, is insufficient and, therefore, discovery is needed. Secondly, Plaintiff's request fails to address the pertinent issue, i.e., how this information will establish a genuine issue of material fact that would rebut Defendant's legitimate, non-discriminatory reason for not paying Plaintiff during her absence: to wit: Plaintiff was properly placed in a non-paid leave status because she did not come

to work.

Specifically, the notice of proposed removal did not suspend her from work or place her on a paid leave status. ROI p. 210-13.  Nothing in the proposal letter could lead Plaintiff to believe that she could not return to work and receive pay. *Id*.  Plaintiff missed work from May through September 2004, while she pursued her workers' compensation claim.  Plaintiff received continuation pay for the first 45 days of her absence and then wage compensation benefits until September 30, 2004.  Although Plaintiff told a co-worker that she intended to return to work on October 1, 2004, she did not inform her supervisor and she did not return to work.  Moreover, (after being provided the notice of proposed removal) Plaintiff affirmatively represented that she was not going to return to work, because she was planing to have a surgery for a medical condition unrelated to work.  Thus, Plaintiff's subsequent absence resulted from a non-work related surgery.  Defendant placed Plaintiff on AWOL status during this period, because she did not indicate that she intended to return to work.  Plaintiff first expressed an intent to return to work on January 5, 2005.  Subsequently, Defendant adjusted Plaintiff's pay status from AWOL to paid administrative leave from January 5, 2005, through the date of her removal.

    5)    Documentation showing that Defendant's employees and supervisors made disparaging comments about Plaintiff's age.

First, Plaintiff's amended complaint abandoned her allegations of sexual harassment and any alleged comments have no direct relevance to this case.  Second, to the extent that Plaintiff believes that these alleged comments are evidence of agism and thereby relevant to pretext, Plaintiff argument misses the issue.  Although Plaintiff alleges that she was subjected to ageist comments, she has not alleged that the *relevant decision makers,* Major Peterson or Colonel

Edinger, made any such comments.[3]  Hence, Plaintiff fails to show how discovery will create a genuine issue of material fact.

    6)    Documents relating to the age an disability status of Defendant's workforce and documents concerning the disability status of any person hired to carry out Plaintiff's job responsibilities subsequent to her termination.

Statistical documentation pertaining to Defendant's workforce is contained in the EEO report of investigation ("ROI"), previously provided to Plaintiff.  Specifically, this information consists of eleven pages containing the names, position titles, paygrade, racial identification, disability identification, and age of relevant comparative employees; and two additional pages listing similar information for employees who received adverse actions.  Plaintiff's Opposition fails to acknowledge that this data is contained in the ROI and fails to state why the data is insufficient and needs to be supplemented via discovery.

    7)    Documents reflecting all communications between Plaintiff (including her counsel) and Defendant's legal and EEO offices.

Again, it is inconceivable that Plaintiff would assert that Defendant has in its possession documents provided by *Plaintiff and her counsel* that Plaintiff either does not have herself, or at least cannot list with specificity so that this Court could decide if the documents could contain information establishing a genuine issue of material fact.  Plaintiff offers no explanation of why she is not in possession of these documents or what these documents may be.

    8)    Plaintiff needs to depose Plaintiff's first and second line supervisors

---

[3] Plaintiff's amended complaint attempts to avoid this issue liberally referrence only to "Defendant" as the discriminatory and/or retaliatory entity, i.e., "*Defendant* retaliated against Plaintiff by not permitting Plaintiff to return to work..." (Amended Compl. ¶ 14), "*Defendant* did not pay Plaintiff any salary during this time" (Id. ¶ 15), "*Defendant* terminated Plaintiff's employment" (Id ¶ 16)(emphasis added).

Plaintiff's Counsel's affidavit asserts that he was not able to conduct depositions during the EEO investigation. (Affidavit ¶ 11). While not labeled a "deposition", Plaintiff's Counsel was provided, however, with a full and fair opportunity to examine relevant witnesses. For example, Plaintiff's Counsel asked questions of every witness called at the hearing, to which these witnesses testified under oath. (Defendant's Exhibit 2).[4] Plaintiff's Counsel makes the conclusory allegation that the "administrative record in this case was created and maintained by Defendant's own employees - namely, Defendant's EEO office" with the tacit implication that the administrative record is thus somehow less accurate or reliable.[5] Yet, Plaintiff provides nothing other than the bare assertion in support of this contention. Plaintiff fails to explain why the record is unreliable, e.g., he fails to allege that there are documents missing or inaccurate or, more importantly, how these putative inaccuracies create a genuine issue of material fact. Lastly, Plaintiff states that "two or three key witnesses wer not even interviewed by the EEO investigator...because those witnesses were traveling and/or in Iraq at the time. *Id*. Yet, Plaintiff does not state what material facts she expects these witnesses to provide and how those facts would be create a genuine issue that would defeat summary judgment.

In sum, Plaintiff's request for discovery is nothing more that a list of conclusory

---

[4] The brevity of Plaintiff's Counsel's examination of the decision makers was a product of his own doing. For example, Plaintiff's counsel began his questioning of Major Peterson as follows: "This is Mr. Ehrenberg. I'm just going to ask you a few questions. I know you have to get to work so I don't want to keep you too long." Plaintiff's counsel began his questioning of Colonel Edinger as follows: "I will be as quick as I can. My wife's coming at 7:15 p.m., but I'm not going to take half an hour."

[5] Plaintiff's assertion is wrong. Department of the Army formal EEO investigations are conducted by the Department of Defense Investigations and Resolutions Division (IRD), formerly known as Office of Complaint Investigations Division (OCI), a Department of Defense agency separate from Defendant's internal EEO offices.

allegations that Defendant is in possession of evidence that is helpful to her case. Plaintiff falls far short of showing how this evidence would create a genuine issue of material fact. Moreover, Plaintiff is in possession of much of the evidence she seeks, e.g., statistical evidence provided in the ROI, medical documentation from her own medical providers and communication sent from her attorney to Defendant. She fails to explain why she is unable to obtain this information in order to oppose summary judgment. Lastly, Plaintiff's complaints about the adequacy of the report of investigation are without merit, e.g., she provides no evidence that she was attempted to examine witnesses, but was rebuked by the investigator, no evidence that additional witnesses would have testified to information that would have been supportive of her case, no evidence that relevant documents failed to be included in the record or that the record in inaccurate.

### III. CONCLUSION

For the reasons set forth above and in Defendant's memorandum of points and authorities, Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(f) should be denied and Defendant's Motion to dismiss, or in the alternative, Motion for Summary Judgment, granted.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney

                                                          _____/s_____
STEVEN M. RANIERI
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

OF COUNSEL:
Louise Schmidt
U.S. Army Litigation Division
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837